## BARBER v. EL DORADO LUMBER CO., Inc.
### No. 4190. *

Court of Appeal of Louisiana. Second Circuit. Second Division.

Jan. 14, 1932.

Jackson & Smith, of Shreveport, for appellant.

Kennon & Kitchens, of Minden, for appellee.

CULPEPPER, J.

Plaintiff was riding as an alleged guest on the front seat with the driver of the automobile at the time he received the injuries for which damages are herein claimed. The automobile ran into and collided with defendant's truck, which was in charge of an employee of defendant, and which is alleged to have been negligently parked on the public highway at night without any rear light or warning of any kind.

There was judgment in favor of plaintiff for the aggregate sum of $4,190.50, and defendant has appealed. Plaintiff has answered the appeal, praying that the judgment be amended to cover the full amount sued for.

The petition sets forth the alleged facts leading up to the accident about as follows: That on February 8, 1931, at about 1:30 at night, plaintiff was riding as a guest with Hope May as driver in a four-door Ford sedan, on the Minden-Shreveport highway, en route from Jonesboro to Shreveport; that, when about one mile west of Minden, at a point about the middle of a curve in the road,

and while said automobile was being driven cautiously, at a legal rate of speed, and keeping on the right side of the road, also keeping a careful lookout, they were suddenly confronted by a large heavily loaded truck parked near the center of the road and headed in the same direction they were traveling; that the truck had no lights on it, particularly no rear light, lantern, or reflector, or light of any kind visible from the rear, nor was any warning given them; that the truck was being driven by a negro named Tom Wimberly, who was agent for and in the employ of defendant; that plaintiff gave warning to said Hope May as soon as the truck became visible to him, and every effort was made to avoid hitting it, by driving to the left, "but solely on account of the negligence of defendant and its agents" a violent collision occurred, which completely demolished the automobile and seriously injured plaintiff.

Plaintiff sets out particularly the following alleged acts of negligence on part of the truck driver as being in violation of the traffic laws of the state and the ordinary rules of safety, viz.: That the truck was parked on a curve, with less than 200 feet clear view from its rear; that it was parked on the paved portion of the highway, when it was possible and practicable to have parked on the unpaved portion or shoulders thereof; that there was not left a clear and unobstructed width of less than fifteen feet on the paved portion of the highway opposite the truck, for free passage of other vehicles; that it was parked on the highway at night without any lights, and particularly no rear light, reflector, or lantern, which would be visible a distance of five hundred feet to the rear; that no warning was given by those in charge of the truck.

The defendant answered, admitting that Tom Wimberly was in its employ and had charge of the truck at the time of the accident, but denies any negligence or fault whatever on Wimberly's part, and avers the accident was due solely to the fault and negligence of the plaintiff and the driver of the automobile, for which defendant is in no wise responsible; avers that the automobile was being driven at the time at a fast and reckless speed, in excess of fifty miles per hour, and neither the driver nor plaintiff was keeping a proper lookout, or exercising any caution; admits the truck was parked on a slight curve in the road, but avers that, by the exercise of ordinary care on the part of the driver and the plaintiff, the collision could have been avoided; that the alleged negligence of plaintiff and the driver of the automobile was the proximate cause of the accident. It is averred that plaintiff and said driver were engaged at the time in a joint enterprise or undertaking, and engaged jointly in the operation of the car.

Defendant in the alternative pleads concurrent contributory negligence on the part of plaintiff, and which, it is alleged, was the proximate cause of the accident.

The court, according to its written opinion, found that plaintiff was merely a guest; that he had no control over the car, and was not engaged in a joint enterprise with the driver; that the driver of the truck and of the automobile were both guilty of negligence; and that their negligence continued up to the moment of the accident, or (quoting) "at least until plaintiff and the driver of the sedan saw the truck, so that if either or both of the drivers was a party to the suit, it might well be disposed of here, but the rule does not appear to be the same with reference to the guest. The rule is that contributory negligence of the driver cannot be imputed to the guest who has no control over the driver of the automobile."

■ It was contended by defendant, and sought to be proven, that plaintiff and the driver were at the time intoxicated, or at least under the influence of intoxicating liquor to such extent as to amount to negligence; but the court decided that the proof did not justify such finding. From an examination of the evidence, we think the court correct in that respect. Edmond Brooks, who was riding in the back seat asleep at the time, and had to be helped out of the car after the accident, may have been drunk. A bottle of "Padres," a drink concoction containing 22 per cent. alcohol, was found half empty in the back part of the car where he was riding. But both plaintiff and May deny having drunk any liquor or other intoxicants that night, and no direct evidence was adduced to show that either of them had done so, or that either of them was intoxicated.

■ Plaintiff, Hope May, and Edmond Brooks all resided in Jonesboro, and were en route to Shreveport, driving a four-door Ford sedan belonging to Brooks' father. Some time in the afternoon before these boys left Jonesboro, Brooks and May, out of the presence of Barber, the plaintiff, arranged for the trip to Shreveport to visit some girls. Later in the day plaintiff, hearing about it, and being himself desirous of going, as he states, to Shreveport to visit some of his relatives, went to May and Brooks and requested to go along with them, which request was granted. Some time after 9 o'clock that night they all left Jonesboro. When a few miles out, they returned for a fan belt and started out again at about 10:30. Brooks was driving. At a point near Arcadia they had a flat tire and stopped to repair it. Then Brooks got in the back seat and May drove the car, with plaintiff on the front seat by May.

Plaintiff took no part in driving the car along the road, but merely sat by the driver, and exercised no control whatever over the car or the driver. Under these circumstances, plaintiff was merely a guest or licensee.

■■ It was near midnight when they proceeded on their way from where the tire was adjusted. It was about 1:30 when the accident happened. The distance from Jonesboro to the place of the accident was about fifty miles. Plaintiff and May testified they traveled on an average of thirty-five to forty miles an hour the entire distance, and their speed at the moment of the collision was about the same as it had been. The two negroes who were in charge of the truck testified that the automobile as it ran upon them was going, one of them said sixty-five miles per hour, and the other one said it was going as fast as it could. Judging by the distance traveled and the time consumed, it is probable that the automobile was not going at a greater speed than was testified to by them. But, considering that it was at night and misty and foggy weather, the speed may be considered greater than it should have been.

The trial judge states that it was excessive, "considering it was night and rainy or foggy, and that under the circumstances the driver was not keeping the proper lookout." Forty-five miles per hour is permissible under the law, but such rate of travel is the maximum, and evidently intended only under favorable conditions. The point of the accident was at a curve, which called for a slackening of speed and greater precaution. Plaintiff and the driver did not see and discover the truck until within thirty-five or forty feet of it, which was apparently too close to stop at the speed the car was moving. The driver of a car, at night, in foggy or rainy weather, on a much-traveled highway, as this one is, should regulate his speed and be on the alert, so as to be prepared for contingencies. However, such a contingency as an unlighted truck parked on the highway is unusual, and rarely to be expected.

If, as found by the trial judge, there were no rear lights on the truck, and nothing to warn those approaching from that direction, its driver was grossly negligent.

■ Defendant contends that the evidence does not show by a preponderance that there was no rear light.

Hope May testified positively that the truck had no rear lights. From plaintiff's description of the accident, the inference is that there were none. He stated (quoting): "We were driving along and I, myself, was expecting that he (May) was going to meet a car coming around the curve, so I was looking ahead, and all of a sudden something looked up in front of us. I yelled and Hope tried to swerve the car out of the way, but he just didn't quite make it."

Leland Longino, state highway officer, arrived at the scene a few minutes later. He testified that he examined the lights on the truck, and found that only one headlight would burn "and no tail light," and that he also had a mechanic to examine them, and, as a result, he arrested Tom Wimberly, the driver. Wimberly was later indicted under the charge of parking the truck upon the paved portion of the highway and leaving it without any rear light or reflectors. To this charge Wimberly pleaded guilty in the court presided over by the judge who tried the present case.

Two mechanics, Andress and Gibson, examined the rear light bulb of the truck, and found that it would not burn. Andress says he fixed it by taking out the bulb and putting in a new one. Gibson states that the bulb had burned out because it had turned black and was discolored. It was his opinion, as well as that of Andress, that the jar from the collision did not cause the bulb to be out, but that it was already out. There was considerable testimony tending to show that the light bulb was put out by the concussion caused by the collision. The great weight of the evidence, however, we think, is that the light bulb had burnt out before the collision took place. From the photograph of the road and the location of the truck, even if the truck was stopped on a curve, the curve was slight, and plaintiff or the driver, or both, would have seen the light had it been burning. Plaintiff testified he was keeping a lookout at the time for cars around the curve. If he was, it would seem most unusual for him not to have observed a light on the truck had there been one, even if the weather was rainy or foggy. We think, as did the trial judge, that it is fair to conclude from the evidence that there was no rear light of any kind on the truck.

As to whether the truck was parked on the pavement or partly off of it, the fact is that the automobile which was on the pavement ran into it, although an effort was made to swerve to the left and miss it. A considerable portion of the truck was bound to have been on the pavement.

We agree with the lower court in the view that the drivers of both the car and the truck were at fault.

Defense counsel contend that, even if the driver of the truck was negligent in parking it upon the highway as he did, that the negligent manner in which the automobile was being driven and, by not keeping a proper lookout, ran up to and into it when the driver and plaintiff should have discovered it in time to stop; that it was negligence in both plaintiff and the driver not to have done so, and this negligence was the proximate cause of the accident. There were the two employees of defendant in charge of the truck. It would have been an easy matter for one of them to have guarded the rear and given warning to approaching autoists while the other one fixed the light in front. It was negligence not to do so, and such negli-

gence was a continuing one, lasting up to the moment of the impact, and certainly may be said to be one of the proximate causes. The same might be said of Tom Wimberly, the other employee of defendant. He was there with the truck, and could and should have either given warning or instructed the other one, E. C. Allen, to do so. These two employees, having stopped the unlighted truck on the highway, were under a greater duty to keep a watch out and warn approaching autoists than the autoists themselves were under, because it was they who had stopped the truck and had knowledge of the danger, whereas the autoists were not aware of it, and in fact would scarcely think of such an uncommon thing as an unlighted and unguarded truck parked on the highway at night.

■ Counsel for both plaintiff and defendant have cited a number of authorities as affecting the right of a guest to recover. It seems that, when the guest himself is not at fault, he can recover from the one whose fault was the proximate cause.

In Churchill v. Texas & Pacific Ry. Co., 151 La. 730, 92 So. 314, 315, cited by plaintiff counsel, Hayslip, the driver of the automobile in which Churchill was a guest was held negligent in approaching the railroad crossing without slackening his speed and attempting to beat the train across. The court held that such would not defeat recovery by Churchill, unless negligence could be charged to Churchill himself; Churchill (quoting) "not having charge of the operation of the machine, was not required to keep a lookout for danger, but could rely upon the discharge of that duty by the driver, who was responsible for its operation; and it not appearing that the deceased saw the approaching train until almost the instant of the collision, and, having shouted a warning as soon as it was discovered."

In Delaune v. Breaux (La. App.) 135 So. 253, 254, also cited by plaintiff, the court, in discussing the comparative degree of care required of the driver and of the occupant, states:

"The guest, as we had occasion to say in other cases, cannot rely entirely or implicitly on the driver of the car, but is entitled to a reasonable extent, to place reliance on the care and proper management of the one operating the auto. The guest, whether seated on the front or back seat of an auto cannot be placed on the same footing with the driver in reference to the care, caution, and vigilance which would be required of the one driving. * * *

"The guest is not expected, as a general proposition, to have seen what the driver 'should have seen'; otherwise the same measure of vigilance would be placed upon him as on the one operating the car."

The court, in discussing this case, makes clear a difference between those operating a car when engaged in a joint enterprise and the case where one is driver and the other a guest. In the former, the companion in the car " 'must take observation of dangers' and therefore is held practically to the same degree of care as devolves upon the driver," whereas, in the latter case, "no such watchfulness or observation of dangers is expected" of the guest.

In both the Churchill and Delaune Cases, as in the present case, the guest and the driver saw the danger about the same time, and the guest shouted immediate warning to the driver, calling attention to it. In the Delaune Case, the dangerous object was a truck parked upon the side of the public highway at night, similar to the present case, except that the truck had a rear light. That fact, it would seem, might indicate want of ordinary care on the part of the guest in his failing to see the light in time to give ample warning to the driver, but the court did not so hold.

Plaintiff testified he was keeping a lookout ahead and gave a shout of warning the moment he saw the truck some thirty or thirty-five feet ahead. He saw it as soon as the driver did; hence he was apparently as vigilant as the driver. We think he was exercising at the time the ordinary care reasonably expected of him under the circumstances, and therefore was not chargeable with negligence.

Counsel urge that plaintiff should have protested against the speed and lack of care and precaution exhibited by the driver while coming along the road from Jonesboro. The testimony does not indicate that the driver had been driving at such reckless speed as to make plaintiff apprehend any unusual danger or that he should protest at different points along the route. Plaintiff no doubt knew that May was well acquainted with the road, as May testified he was, and was an experienced driver. Nothing had happened, so far as the evidence shows, to call plaintiff's special attention to the need of protesting. The danger which did manifest itself was of an unusual nature as well as sudden and wholly unexpected. It was not a case altogether similar to the Pipes v. Gallman Case reported in 135 So. 690, cited by defendant. In that case the young ladies were out joy riding, and the driver was going fifty-five miles per hour on loose gravel. The occupants of the car could readily see that the speed was reckless and highly dangerous.

Neither is it similar to the case of Sloan v. Gulf Refining Co. (La. App.) 139 So. 26, cited by counsel. In that case the car in which plaintiff was riding had no lights. He and the driver knew that fact, and, after

discussing whether to even start out on the public highway or not, they both deliberately decided to take chances. Plaintiff, so the court stated, was equally to blame with the driver. It was plain that he knew of the extraordinary danger and agreed voluntarily with the driver to risk chances.

Can it be said that plaintiff knew or should have known that Hope May was operating the car negligently or in an unlawful manner? Plaintiff's own testimony is that May was not. His and May's testimony is that the car was being driven at a regular speed of thirty-five to forty miles per hour. The lawful rate under normal conditions is forty-five. The road is one of the well-paved highways of the state. We cannot say that plaintiff believed or should have believed otherwise than that they could safely proceed along such a highway as that, at that rate of speed, even if it was at night and somewhat rainy or foggy, especially in view of the belief that May was a good driver and familiar with the road, and his car in good condition. If May had been making forty-five or fifty miles per hour, or had indicated recklessness or carelessness in handling the car, plaintiff would have had reason to believe that he should protest. We do not think that the jurisprudence of this state has yet gone so far as to define conditions and circumstances, such as are found here, to be negligence on the part of plaintiff because he failed to protest at the driver.

As stated by the court in the case of Delaune v. Breaux, supra: "The deceased, a guest, would naturally have expected that vehicles would pass their car going either way, but not that a large [unlighted] truck would be parked on the side of the highway on which they were traveling. To require that a guest should look out for such sudden and unusual obstructions would be asking more than the law requires."

It is therefore our view that no negligence can be charged to plaintiff, and we think he is entitled to recover.

We have carefully noted the trial judge's impressions and conclusions drawn therefrom in his written opinion as to the various items awarded. None of them, so far as we can tell, appear to be excessive. The judge states that doubtless plaintiff will have some permanent disability, but will not have anything like the amount testified to by some of the witnesses, and that it is all a matter of guesswork.

The claim for permanent injury is due to the fractured ulna and radius bones of the right arm. Three doctors place the permanent impairment of the function of the arm at from 60 to 75 per cent. Dr. McDade stated that it was too short a time since the injury occurred to say whether the impairment will be permanent or not, as it would be guesswork. The preponderance of this expert testimony is that partial impairment will be permanent, and that it will be total for a period of a year from date of injury. For the temporary total disability, the judge has allowed for only six months, or $810, instead of twelve months, based on the amount of salary plaintiff claims he was making. And for permanent partial impairment $2,000 is allowed; $750 was allowed for pain and suffering. No doubt the pain and suffering has been considerable on account of the many cuts, bruises, and shock, and the continued treatment given the arm. An additional operation appears necessary, which will cause added pain and discomfort. At a reasonable rate for loss of earning capacity due to permanent impairment to a man of plaintiff's age, eighteen years, we cannot say that the amount allowed is excessive. The items for doctors' bills, medical attention, nursing, and damages to wearing apparel, all seem to have been proven. The amount of award in such case given by the trial judge must have great weight with the appellate court. We find no manifest error in his findings, and same will be approved by this court.

For the reasons assigned, the judgment is therefore affirmed.

DREW, J., concurs.