SAMUEL, Judge.
These two cases, consolidated for trial, arise out of the same automobile accident. Two collisions were involved, the first between a car driven by Melvin M. Marino and one driven by Mrs. Mary JO' Ritter, and the second, occurring immediately thereafter and as a result of the first, between the Ritter car and an automobile driven by Clyde T. Carney.
The first suit was filed by Raymond R. Ritter, Mrs. Ritter’s husband, and his insurer and subrogee, Hardware Mutual Casualty Company, against Melvin M. Marino, Clyde T. Carney and Lumbermen’s Mutual Casualty Company, Carney’s insurer, for property damage to the Ritter automobile. In this suit Carney filed a reconventional demand for his personal injuries, medical expenses and property damages.
The second suit was filed by Carney, individually and on behalf of his minor daughter, and by his wife against Raymond R. Ritter, Mary Jo Ritter and Hardware Mutual, as insurer, for personal injuries and medical expenses. A third party petition was filed in this suit by all defendants against Marino.
In the first case the trial court dismissed plaintiffs’ suit as to all defendants and rendered judgment in favor of plaintiff in reconvention, Carney, and against Hardware Mutual in the sum of $2,239.36.
*474 In the second case the trial court rendered judgment against Raymond R. Rit-ter, Mary Jo Ritter and Hardware Mutual and in favor of Carney first individually in the amount of $1,121.75, and secondly in favor of Carney for the use and benefit of his minor child in the amount of $500.00; and in favor of Mrs. Carney in the amount of $5,000.00. Judgment was also rendered in favor of third party petitioners, Raymond R. Ritter, Mary Jo Ritter and Hardware Mutual against the third party defendant, Marino, for $3,310.88 (this being 50% of the total amount awarded to Carney, individually and for the use and benefit of his minor daughter, and to Mrs. Carney).
Raymond R. Ritter, Mary Jo Ritter and Hardware Mutual have perfected this sus-pensive appeal from both judgments. They do not contest quantum nor do they seek any further judgment against Marino. The Carney litigants simply seek an affirmation of the two judgments. Marino has made no appearance before this court.
The accident happened on the Airline Highway in Jefferson Parish just across from Moisant Airport shortly after 5:30 a. m. on March 27, 1960. Daybreak had occurred but it was still sufficiently dark to require the use of vehicular headlights. The highway was wet and a light rain was falling. At the point where the accident occurred the Airline Highway consists of two lanes reserved for traffic traveling north, i. e., in the direction of Baton Rouge, and two lanes for traffic traveling south, i. e., in the direction of New Orleans. There is no neutral ground.
After completing their work at the airport where both were employed, Marino and his passenger, Benitez, had been drinking beer at a lounge or bar about two or three miles from the airport towards New Orleans. They left that lounge with the intention of driving Benitez home (he lived in Kenner so that they were traveling north) but decided to stop for one more beer at the Deicer Lounge which is located on the river or west side of the highway opposite the airport and thus necessitated making a left-hand turn. Just before negotiating the turn Marino stopped his car in order to permit a vehicle traveling in the opposite direction to pass. He then proceeded to cross the New Orleans bound lanes of traffic and in doing so struck the Cadillac driven by Mrs. Ritter which was traveling south, towards New Orleans, in its extreme right lane.
The impact caused the Ritter car to go out of control and it swerved across the highway directly in the path of the automobile driven by Carney, which was traveling at a proper speed towards Baton Rouge in its extreme right-hand lane. The Ritter car was struck on its right side by the Carney vehicle and both cars went into a ditch on the east side of the highway. All cars were damaged and three occupants of the Carney car, Mr. and Mrs. Carney and their minor daughter, together with Mrs. Ritter, were injured.
There is, of course, no negligence on the part of Carney. Equally of course, there was negligence on the part of Marino. The single question presented for our consideration is concerned with the negligence, if any, of Mrs. Ritter.
Her opponents contend that Mrs. Ritter was traveling without lights. If this contention is true then the case must go against her, her husband and her insurer. For, as mentioned above, it was sufficiently dark to require the use of headlights (LSA-R.S. 32:290-301); under all the circumstances here involved the operation of her automobile by Mrs. Ritter without lights would constitute negligence (Sloan v. Gulf Refining Company of Louisiana, La.App., 139 So. 26) ; and such negligence would have been a proximate cause of the resulting accident.
Carney and his two passengers did not see headlights on the Ritter automobile. The daughter and Mrs. Carney testified they were looking straight ahead and did not see the Ritter car. Carney himself testified *475 ■that he did see the Ritter car just before ■the collision and that he was in a position to have seen the headlights if they had been burning. He also looked at the two cars after the collision. At that time the front ends of both cars were down in the ditch and he was unable to see whether or not the headlights were burning but he did observe that the tail lights of his car were burning and the tail lights of the Ritter car were not.
Both Marino and Benitez, the latter being called as a witness for the Ritters and Hardware Mutual, testified that Mrs. Rit-ter was driving without lights. Before the trial Benitez had signed a statement for a representative of Hardware Mutual in which he stated that the Ritter car did have its lights on at the time of the acci■dent. However, his testimony at the trial is quite clear and positive and we place very little weight on the contents of the ■statement.
Mrs. Ritter testified that her lights were 'burning at the time of the collision with the Marino car. But in describing her actions in beginning the drive, which originated from her home a short distance from the scene of the collision, she failed to mention "turning on her lights until after her attention was called to the omission. The only other witness who gave any testimony on the question of the lights on the Ritter car was Virginia Elvington, Mrs. Ritter’s niece who was called as a witness by the Ritters and Hardware Mutual. She testified that she arrived on the scene shortly after the accident had occurred, saw the two cars in the ditch, and at that time the tail lights of the Ritter car were burning.
The judge of the trial court saw and heard all of the witnesses. After a thorough consideration, and a detailed discussion in his reasons for judgment, of the ■question of whether or not the headlights of the Ritter car were burning at the time •of the accident, he came to the conclusion that those headlights had not been burning. A careful examination of the record convinces us there was no error in that finding of fact. ^
For the reasons assigned, the judgments appealed from are affirmed.
Affirmed.