MILLER, Judge.
James Sistrunk and Traders & General Insurance Company appealed the trial court’s decision that a motorcyclist driving on a highway at night without lights at a speed of 25 mph was not negligent because the area was sufficiently lighted by street lights and the oncoming motorist’s headlights. We reverse.
After dark on November 7, 1968, Clifford Ray Moss, age 16, was driving his newly acquired “used” Honda 125 south on Louisiana Highway 175 in the Town of Pleasant Hill. The area is relatively open with about one house or store in each block. Moss testified that his lights went out some 350 feet north of Bridges Street, but he continued southbound (without slowing, Tr. 107) since he could see the road well enough. He was dressed in dark pants and a dark grey coat. He did not have a driver’s license and was not wearing a helmet. At *722 trial he testified he was traveling 25 mph, but could not see his speedometer. He “guessed” he told the investigating officer that he was traveling 35 mph. Tr. 117.
Highway 175 is hardsurfaced to a width of 18 feet and Moss was driving south about 2 feet east of the west edge of the hard-surfaced road. At about the time Moss’ lights went out he oberved the headlights of the northbound James Sistrunk vehicle coming in a curve located some 373 feet south of the Bridges Street intersection. Moss testified that the car proceeded normally toward him at about 25 mph; that no turn signal flashed; that the car slowed all at once to a speed of 5-10 mph; that when he reached Bridges Street, the oncoming car started its left turn (Tr. 108); that he applied his brakes; that at impact Moss was traveling 20-25 mph and the vehicle was traveling 5-10 mph; and that the Sistrunk vehicle stopped at the point of impact.
The front wheel of the Honda struck the center of the front of Sistrunk’s left turning Ford Torino at a point 2 feet east of the west hardsurfaced edge of Highway 175 and in line with a projection of the south boundary of Bridges Street (which is 20 feet wide).
The investigating officer found 10 feet of skidmarks laid down by the motorcycle before impact. Mrs. Sistrunk admitted that she didn’t see the motorcycle until impact.
Mr. and Mrs. Sistrunk testified that they were riding for their enjoyment; that they were traveling north at 25 mph with their headlights on dim; that Mrs. Sistrunk turned on her left signal light when she was 200 feet south of the Bridges intersection (Mrs. Sistrunk) or 50-75 feet from the intersection (Mr. Sistrunk); that their home was only a block away on Bridges Street; and that Mrs. Sistrunk did not see the motorcycle until impact. Mr. Sistrunk saw the motorcycle when it reached the intersection. Tr. 71.
According to measurements made by Moss and his mother, the street light at the Bridges intersection is 28 feet east of the east edge of the paved portion of Highway 175, and in line with the projected south limits of Bridges Street. There is another light 101 feet north of Bridges Street and 33 feet west of the west side of Highway 175. The testimony as to the amount of illumination given by these two lights is only general. Moss and his mother based their appraisal of the amount of light on an experiment conducted a few days before trial. For the experiment Mrs. Stutts stood still on the highway south of the intersection and looked to the north to see when she could first see her son walking toward the intersection. She first observed him when he was 266 feet north of Bridges Street. At Tr. 124, on direct examination she was asked:
“Q. Did he go back into darkness at anytime from that point until he got to Bridges street ?
“A. Yes, sir.”
Sgt. Clarence J. Miller investigated the accident. When asked to describe the street lights, he indicated that these were not the new powerful city street lights, and explained that these lights were “the type that these small towns — just a bulb burns inside an enclosed cover.” He didn’t know how far to the north the area was illuminated, but said that it was “a few feet.” He admitted that the illumination was to “a very limited extent.” As to the light to the north of the intersection, he agreed that it did not illuminate the intersection to any degree at all. Tr. 83.
The trial court cited the burden placed on the left turning motorist by LSA-R.S. 32:104 and the jurisprudence as summarized in Washington Fire & Marine Insurance Company v. Fireman’s Insurance Company, 232 La. 379, 94 So.2d 295 (1957), and held at Tr. 140 that:
“These street lights together with the headlights from the Sistrunk automobile, *723 should have provided sufficient illumination for Mrs. Sistrunk to have seen Ray Moss and his motor bike before she turned into Bridges Street, had she been observing the road ahead. She is presumed to have seen what she should have seen. Therefore, it is my opinion that Mrs. Sistrunk was negligent in making a left turn, at a time when she should have seen the approaching motor bike, when it was so close that it was unsafe to make the turn.
i¡< % H* ^ * *
“ * * * the evidence shows that the area was sufficiently lighted with street lights that the motor bike was sufficiently visible for Mrs. Sistrunk to see, and that young Moss was not negligent; but that if he was negligent, his negligence did not contribute to the accident.”
We find manifest error. As to the speed of the motorcyclist, we are more impressed with the 35 mph estimate of speed given to the investigating officer shortly after the accident than by the 25 mph estimate given at trial. The dark dressed motorcyclist was negligent for traveling on the highway at night at a speed of 25-35 mph without lights. This speed under the circumstances was excessive and was a proximate cause of the accident.
The trial court erred in finding sufficient illumination to permit the northbound motorist to see this southbound unlighted motorcyclist wearing dark clothes while traveling 25-35 mph. The street light bulb “inside an enclosed cover” was some 60 feet from the point at which the speeding unlighted motorcyclist entered the intersection. The difference in relative speeds of the two vehicles suggests that the motorcycle was further from the impact point than the automobile as they approached the impact point. This places the motorcyclist further from the streetlight at Bridges Street, and therefore in a darker area.
The trial court did not express an opinion concerning credibility of the Sistrunks concerning their statement that the left turn indicator was flashing for some time before the left turn was commenced. This too should have caused the motorcyclist to slow his speed. Even if the left turn signal was not flashing, the motorcyclist observed the 25 mph moving vehicle “suddenly” (to use his testimony) slow to 5 to 10 mph and commence its left turn. This should have caused him to slow before reaching the intersection.
LSA-R.S. 32:301 requires that:
“Every vehicle upon a highway within this state at any time between sunset and sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 500 feet ahead, shall display lighted lamps and illuminating devices as hereinafter respectively required for different classes of vehicles subject to exception with respect to parked vehicles.”
LSA-R.S. 32:303(B) requires that:
“Every motorcycle and every motor-driven cycle shall be equipped with at least one and not more than two headlamps which shall comply with the requirements and limitations of this chapter.”
This statute was designed to protect life and property on the highways. This negligence is actionable if it was a legal cause of the collision. Negligent conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm. Dixie Drive-It-Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962).
The motorcyclist’s negligence in driving on the highway after dark with no lights at a speed of from 25-35 mph was a substantial factor in and a cause in fact of this accident.
Counsel for Moss contends that if his negligence was a proximate cause of the accident, Mrs. Sistrunk had the last clear chance to avoid the accident. We think not.
*724 Appellee contends that Moss was not in a position of peril until the Sistrunk vehicle began its left turn. At that time, he was too close to impact to extricate himself from his position of peril; that when Mrs. Sistrunk slowed to 5-10 mph before turning she should have seen the motorcyclist and either stopped or continued in her proper lane of travel.
This argument is rejected on our finding that the left turning motorist was not negligent for failing to see the dark dressed motorcyclist coming without lights from a darkened area at a speed of from 25 to 35 mph.
A motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction when he had no reason to anticipate he would encounter on the highway. An unlighted vehicle moving upon the highway at night constitutes just such an unexpected or unusual obstruction to an approaching motorist. Graham v. Hartford Accident and Indemnity Co., 159 So.2d 333 (La.App. 2d Cir. 1964).
The trial court judgment is reversed and set aside and plaintiff’s demands are rejected at her cost both at trial and on appeal.
Reversed and rendered.