MILLER, Judge.
Defendant Southern Farm Bureau Casualty Insurance Company appeals the judgment awarding damages to plaintiff Charles Michael Cowart and his minor son. Plaintiffs were injured in a headon collision which occurred in their lane when de *358 fendants insured made an unsignaled left turn. Plaintiffs answered the appeal seeking an increase in the award. We affirm.
The thrust of defendant’s assignments of error is that Cowart’s headlights went out when he was some 170 yards from the site of the accident and some 200 yards from defendant’s insured, James Fontenot. The trial judge rejected this defense and held that Fontenot was negligent in undertaking the left turn when he did not have reason to believe the maneuver could be safely executed. The trial judge reasoned that if the headlights went out, it was after the vehicles were much closer and at a time when Fontenot knew or should have known that plaintiff’s vehicle had the right of way.
The accident occurred about 8:30 p. m. on September 3, 1970, on the Indian Village road (Louisiana Highway 383) just west of Kinder. As they approached the site of the accident, Cowart was driving east at 45 m. p. h. and Fontenot was driving west at approximately 30 m. p. h. Tr. 59. Fontenot intended to turn left into a private driveway. The hard surfaced two lane highway is straight, level and the posted speed limit is 45 m. p. h. There were no obstructions to visibility. There are a few houses in the vicinity and a school is south of and some distance west of the site of the accident.
There is a mercury vapor street light located 96 feet east of the impact area and some 30 feet from the center line of the highway. Another mercury vapor light is located 612 feet west of the first light (516 feet west of the impact area) and 48 feet south of the centerline of the highway. A third mercury vapor light was 522 feet west of the second one and it too was presumably 48 feet south of the centerline of the highway. Tr. 136-138.
Defendant’s insured Johnson testified that he first noticed plaintiff’s vehicle when it was “about 200 yards” ahead of him. Tr. 58. At that time plaintiff’s headlights were on bright with three lights on. Tr. 74. Johnson’s headlights were on dim and Johnson had slowed to 10 or 15 miles per hour. Johnson continued to observe the oncoming vehicle. Tr. 61. He noticed that the headlights were dimmed and only the right front light was then on, and that one began to get “dimmer and dimmer before it went out.” Tr. 62. There was “a period of time” before the dimmed light ultimately went out, which Johnson estimated at “about 3 seconds.” Tr. 62. Johnson started his left turn “after it went out or as it was going out.” Tr. 63. Johnson lost sight of the oncoming vehicle when it was 35 to 50 yards from the site of the accident. Tr. 64, 65. Johnson next saw Cowart’s vehicle in the light of his own headlights when Cowart was between 15 and 25 yards from Johnson. Tr. 66.
The impact occurred in the eastbound lane and the entire front ends of both vehicles were damaged. All headlights of both vehicles were broken.
Cowart testified that he noticed the headlights of the Johnson vehicle when they were about a quarter mile away (Tr. 96) and that the car was approaching in a normal manner. Tr. 88. Johnson suddenly turned into Cowart’s lane and Cowart immediately applied his brakes leaving 18 feet of skidmarks on the highway. Tr. 88. Cowart did not remember exactly where he was when he dimmed his headlights, but estimated that he was at the schoolhouse at the time. Tr. 100. Since the schoolhouse is a long building the court attempted to pin down the distance. Cowart estimated that he was “a little closer” than 200 yards from Johnson when he dimmed his lights. Tr. 100, 101. Cowart admitted on cross-examination that one of his headlights could have been out as he approached Johnson, but denied that both of them could have gone out without his knowing it. Tr. 106. He thought both his dimmed headlights were on until impact. On cross-examination, he testified that if his headlights went out before impact, “it would have had to been so close to where *359 his (Johnson’s) lights would have been blinding me.”
“Q. Well, is it possible that both of your lights could have gone out ?
“A. Yeah, its possible.” Tr. 106.
On re-direct, Cowart testified that it was not probable that his lights went out. Tr. 106, 107, 108.
Defendant’s expert witness Alvin Doyle, Jr. testified that his examination of the broken headlights eight days post accident led him to the conclusion that none of Cowart’s headlights were burning when the vehicles collided. There was no expert testimony in opposition, but this persuasive testimony was only supported by photographs of the tungsten in one headlight.
The trial court concluded that either Cowart’s headlights were on at impact, or if not, the headlights went off at a time when the two vehicles were so close together that Fontenot was negligent in concluding that he could safely undertake the dangerous left turn in the face of oncoming traffic. Since credibility of the witnesses is essential to this determination (Olivier v. Abunza, 226 La. 456, 76 So.2d 528 [1954]), we find no manifest error in this decision.
Under these facts Fontenot violated the high standard of care required of left turning motorists under LSA-R.S. 32:104 and the jurisprudence interpreting this statute. Washington Fire & Marine Ins. Co. v. Firemen’s Ins. Co., 232 La. 379, 94 So.2d 295 (1957). Vick v. Hanover Insurance Company, 221 So.2d 523 (La.App. 2 Cir. 1969).
The cases of Hardware Mutual Casualty Company v. Marino, 141 So.2d 473 (La.App. 4 Cir. 1962) and Stutts v. Sistrunk, 245 So.2d 721 (La.App. 3 Cir. 1971) are distinguished on the facts. It was established in both cases that the oncoming vehicle did not have a headlight burning for a substantial period of time before the left turn was commenced. In the instant case, Cowart had his headlights on, and if the dimmed headlight went out before impact, it went out after the left turning motorist knew or should have known that the left turn could not be safely undertaken.
It was on this same basis that the trial court denied defendant’s affirmative defense that Cowart was contributorily negligent. Defendant contended that Cow-art violated LSA-R.S. 32:301 which requires the display of lighted lamps between sunset and sunrise. Also cited were Sloan v. Gulf Refining Co. of Louisiana, 139 So. 26 (La.App. 2 Cir. 1924) and Davis v. Piazza, 145 So.2d 110 (La.App. 4 Cir. 1962). This statute and the cited cases are not apposite to the facts of this case.
Fontenot’s negligence was the sole legal cause of this accident.
Both parties seek to change the trial court’s award of $1,000 in general damages to Cowart and $750 in general damages to his minor son. Defendant suggests that an award in the $500 range would be adequate. Plaintiff contends that the awards for general damages should be increased to $2,000 for Cowart and to $950 for his minor son.
Cowart sustained minor facial lacerations of the chin and left temple region, a mild concussion and general bruises to his upper torso and extremities. He missed two weeks at work and had various complaints for several months. Cowart’s son suffered a severe hematoma to the head, internal injuries causing vomiting, nausea, along with bruises and abrasions about his entire body. He suffered substantial pain for approximately one month following the accident.
The awards are neither excessive nor inadequate. The trial court did not abuse the vested discretion to set quantum. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem *360 nity Company, 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967).
The judgment of the trial court is affirmed. Costs of this appeal are taxed to defendant appellant.
Affirmed.