## MICHAEL TONETTI *v.* BRUCE P. BARTH

Superior Court, Judicial District of Litchfield
File No. CV02-0087784S

Memorandum filed January 7, 2003

*The Haymond Law Firm*, for the plaintiff.

*Morrison, Mahoney & Miller*, for the defendant.

FRAZZINI, J. The present case concerns the novel issue of whether a motorcyclist's failure to wear high visibility clothing during daylight hours[1] is a proper

---

[1] The court takes judicial notice that the incident occured during daylight hours. According to the United States Naval Observatory's Internet site; http://www.mach.usno.navy.mil/cgi-bin/aa-pap.pl; sunset in Litchfield occurred at 7:26 p.m. on May 5, 2000, with civil twilight lasting until 8:27 p.m. See *State* v. *Zayas*, 195 Conn. 611, 615, 490 A.2d 68 (1985) (court may take judicial notice of time of sunset); Conn. Code Evid. § 2-2 (court need not provide parties with notice or opportunity to be heard when taking judicial notice of "matters of established fact, the accuracy of which cannot be questioned").

element of comparative negligence. The complaint alleges that Bruce P. Barth, the defendant, negligently attempted a left turn out of a shopping plaza and struck Michael Tonetti, the plaintiff, who was operating a motorcycle on Route 202 in Litchfield. The collision occured at about 6:24 p.m. on May 5, 2000. The defendant filed a special defense of comparative negligence, one element of which alleges "that the plaintiff was himself negligent . . . [i]n that the plaintiff failed to wear high visibility clothing." The plaintiff has now moved to strike that aspect of the special defense on the ground that he has no duty to wear high visibility clothing. For the reasons subsequently set forth, that portion of the motion to strike is granted.

A motion to strike tests whether a claim states a legally cognizable cause of action. In considering a motion to strike, the court must construe the allegations in the light most favorable to the proponent of the challenged claim. *Faulkner* v. *United Technologies Corp.*, 240 Conn. 576, 580, 693 A.2d 293 (1997). "In a negligence action, the plaintiff must meet all of the essential elements of the tort in order to prevail. These elements are: duty; breach of that duty; causation; and actual injury." *LaFlamme* v. *Dallessio*, 261 Conn. 247, 251, 802 A.2d 63 (2002). "The existence of a duty of care is a prerequisite to a finding of negligence." *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 614, 783 A.2d 462 (2001). The court must, therefore, decide whether the plaintiff owed a duty of care to the defendant to wear high visibility clothing while operating his motorcycle during daylight hours. This issue is one of law for the court to decide. Id. *Petriello* v. *Kalman*, 215 Conn. 377, 382, 576 A.2d 474 (1990).

"A duty of care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature

of that suffered was likely to result from his act or failure to act." *O & G Industries, Inc.* v. *New Milford*, 29 Conn. App. 783, 790, 617 A.2d 938 (1992), aff'd, 229 Conn. 303, 640 A.2d 110 (1994). In negligence, the duty of due care ultimately boils down to two components: the foreseeablity of the harm and a conclusion based on "the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted). *Clohessy* v. *Bachelor*, 237 Conn. 31, 46, 675 A.2d 852 (1996). Although duty is a question of law, its foreseeability component is neccessarily based on the pleaded allegations of fact. See, e.g., *Macomber* v. *Travelers Property & Casualty Corp.*, 261 Conn. 620, 636, 804 A.2d 180 (2002).

The court has found no reported cases expressly finding that a motorcyclist owes other motorists a duty to wear high visibility clothing during daylight hours, nor did either party submit any. In support of its special defense, the defendant cites authority that a darkly dressed pedestrian crossing an unlit roadway at night; *Drobish* v. *Petronzi*, 142 Conn. 385, 386, 114 A.2d 685 (1955); or a darkly dressed motorcyclist operating a motorcycle without lights in the early evening; *Fazio* v. *Brown*, 14 Conn. App. 289, 295, 540 A.2d 1065, rev'd on other grounds, 209 Conn. 450, 551 A.2d 1227 (1988); can be held comparatively negligent. The defendant also cites *Pinho* v. *Daly*, Superior Court, judicial district of New Britain, Docket No. CV00-0500895S (May 3, 2001) (*Shapiro, J.*), denying motion to strike special defense of comparative negligence failure of plaintiff-motorcy- clist to wear proper attire.

The court concludes that the authorities cited by the defendant do not support the special defense. In *Fazio*, for example, a fourteen year old boy was operating a trail motorcycle on a grassy area next to the road in the early evening hours of late January. While crossing

a driveway entrance, the youth was struck by a vehicle turning from the road into the driveway. "There was disputed testimony as to whether it was completely dark at the time the accident occurred. There was no dispute, however, that at the time of the accident, [the youth] was dressed in dark clothes, and that his motorcycle had neither headlights nor taillights." *Fazio* v. *Brown*, supra, 14 Conn. App. 290–91. Although the jury found the cyclist 30 percent contributorily negligent, the specific basis for the finding of contibutory negligence is not discernible in the reported opinions; nor did the appellate decisions address that question. There were so many bases for a finding of contributory negligence—operating a vehicle without illumination, operating on the side of the road, failure to keep a proper lookout—that *Fazio* provides no persuasive authority here.

In *Drobish*, the pedestrian case, the plaintiff was crossing a street at an intersection crosswalk at 11:20 p.m. in late January, with a green traffic light in her direction. She wore a brown overcoat. A slow traveling car in the oncoming lane turned left across the crosswalk and struck the plaintiff as she was three-quarters of the way through. The trial court concluded "that the plaintiff was oblivious to her surroundings, that she was not alert and watchful for her own protection, and that she was, therefore, guilty of contributory negligence." *Drobish* v. *Petronzi*, supra, 142 Conn. 386. The Supreme Court affirmed: "The trial court could have found reasonably that at the time and place of the plaintiff's injury the visibility was poor owing to weather conditions. The plaintiff wore dark clothing which made it difficult for her to be seen. She was crossing a wide street. She was familiar with the intersection and aware that cars could turn from Howard Avenue. These conditions demanded that she be alert. We cannot say under

all the circumstances that she was free from contributory negligence as a matter of law." Id., 387–88.

*Drobish* is one of several reported Connecticut cases in which darkly dressed pedestrians in the street have been held partially at fault for injuries they received when hit by a motor vehicle. In one of the oldest such cases, *Schmeiske* v. *Laubin*, 109 Conn. 206, 145 A. 890 (1929), a darkly dressed pedestrian was walking in the road, three feet from the edge of the street, which was lined on each side by the overhanging branches of tall trees. It had been raining just before the accident and it was dark. The pedestrian was walking with the traffic when struck by the right front fender of a car, thereby receiving the injuries that caused his death. Id., 208. On appeal, the plaintiff claimed that the driver was negligent and the pedestrian not so, both as a matter of law. The court disagreed: "It is a matter of common knowledge that a pedestrian, clad in dark clothing, upon the background of a dark road, and walking in the same direction in which an automobile is proceeding which is overtaking him from the rear, will not under all circumstances be picked up by the headlights of a car at a distance of two hundred feet . . . . Because a dark object, resting upon a dark background, may not be clearly visible under all conditions at a distance of two hundred feet in front of a motor vehicle equipped with headlights which meet the statutory requirements, the failure of the operator of such a vehicle to see such object at that distance may not conclusively establish a lack of due care on his part. The court did not err in submitting to the jury the question of the negligence of the operator of the defendant's car." Id., 209–10; see also *McDonald* v. *Connecticut Co.*, 151 Conn. 14, 18, 193 A.2d 490 (1963) (bus driver not negligent for failing to observe darkly dressed pedestrian who ran at fast pace into street following attempt to overtake moving bus so as to board it); *Messier* v. *Zanglis*, 144 Conn.

449, 452, 133 A.2d 619 (1957) (driver of vehicle in rain who was temporarily blinded by lights of oncoming traffic not negligent when car hit intoxicated and darkly dressed pedestrians who were walking in the same direction on tree lined side of road without streetlights and were indulging in horseplay).

In all these cases, darkly dressed pedestrians walking in the street after dark were subject to claims of negligence because of the obvious foreseeability of harm. Any person walking in the road at night where there are no streetlights is bound to recognize the risk of being hit by a car, and wearing dark apparel without reflective gear does nothing to enhance visibility. Those same pedestrians are bound to foresee that they may not be visible to drivers in the rain, or on dark, tree lined streets, or where there are no streetlights. In the cases cited, the plaintiffs had taken no steps to aid their being seen under circumstances in which a reasonable person would anticipate the likelihood of harm despite all due care by others. That is classic negligence.

In *Pinho*, the court did deny a motion to strike a special defense of comparative negligence for a motorcyclist's failure to wear "proper attire or accoutrements" during daylight hours.[2] *Pinho* v. *Daly*, supra, Superior Court, Docket No. CV00-0500895S. In allowing such a claim of comparative negligence,[3] the *Pinho* court relied on two cases previously discussed, *Drobisch* and *Fazio*, which this court finds inapplicable here.

[2] The complaint in *Pinho* alleged that the collision occured there "at approximately 3:15 p.m. on or about May 10, 1999." *Pinho* v. *Daly*, supra, Superior Court, Docket No. CV00-0500895S.

[3] Expressly declining to consider the defendant's claim that the motorcyclist had been wearing dark clothes at the time of the collision and that "motorcycle operators are instructed to wear bright color clothes when operating sports motorcycles"; *Pinho* v. *Daly*, supra, Superior Court, Docket No. CV00-0500895S; because the complaint did not plead such facts, the court held that "[t]he probative significance of the clothes the decedent was wearing at the time of the incident . . . remains to be established." Id.

It also relied on *Flanagan* v. *Valente*, 31 Conn. Sup. 143, 325 A.2d 532 (1974), in which the court allowed a claim of contributory negligence against a state trooper who had been standing in a road directing traffic while clad in dark clothing and wearing no reflective clothing or equipment. The court's opinion there discloses neither the time of the accident nor the lighting conditions, and, addressing only the trooper's failure to wear reflective garb, held that "the issue of the plaintiff's contributory negligence in allegedly failing to wear proper attire is a question of fact for the jury." Id., 145. Without any legal analysis of the duty question, *Flanagan* is not persuasive here.

A Louisiana case, *Stutts* v. *Sistrunk*, 245 So. 2d 721 (La. App.). cert. denied, 258 La. 578, 247 So. 2d 395 (1971), is cited in a practice comment in 47 Am. Jur. 2d (1987), Proof of Facts, to support the principle that "[a] motorcyclist's choice of clothing may give rise to a finding of negligence under certain circumstances."[4] Id., § 35, p. 212. *Stutts*, however, does not support the plaintiff's case here. Although the court in *Stutts* remarked that the motorcyclist was darkly dressed, the cyclist's apparel did not appear to have influenced the decision or been legally significant.[5] The decision

---

[4] See 47 Am. Jur. 2d supra, Proof of Facts 2d, Negligent Operation of Motorcycle § 3, p. 127.

[5] In *Stutts*, a darkly dressed person operating an unlighted motorcycle at night collided with an oncoming vehicle that slowly turned across the road lane at a properly marked intersection. The appeals court reversed a lower court decision that there had been sufficient illumination from street lights and the lights of the oncoming vehicle to hold the driver of that vehicle liable for colliding with the cyclist. The court of appeals found the motorcyclist negligent for not complying with state law requiring motorcycles traveling between sunset and sunrise to display two lighted headlamps "when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of 500 feet ahead." (Internal quotation marks omitted.) *Stutts* v. *Sistrunk*, supra, 245 So. 2d 723. "The motorcyclist's negligence in driving on the highway after dark with no lights at a speed of from 25–35 mph was a substantial factor in and a cause in fact of this accident." Id.

turned instead on the lack of motorcycle illumination at night in violation of state law, the only point for which later courts have cited the case.[6]

This court, therefore, is not bound by the logic or precedent of the previously discussed cases to conclude that a motorcyclist's failure to wear high visibility clothing may be a basis for comparative negligence. The court must turn itself then, to the twin components of duty—foreseeability and public policy. The essence of the foreseeability prong of duty is whether "a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was *likely* to result from his act or failure to act." (Emphasis added; internal quotation marks omitted.) *Greene* v. *Perry*, 62 Conn. App. 338, 341, 771 A.2d 196, cert. denied, 256 Conn. 917, 773 A.2d 943 (2001).

Our Supreme Court, in discussing the foreseeability component of duty, has frequently noted that the merest quantum of foreseeability does not per se mandate a

---

[6] The only cases reported by Shepard's Citation Service as citing *Stutts* are: *Gordon* v. *Commercial Union Ins. Co.*, 503 So. 2d 190 (La. App.), cert. denied, 506 So. 2d 1227 (La. 1987): "The obligation upon the highway driver to have lights on is imposed not only in order to enable him to see others in his path, but also in order to enable others to see his vehicle. . . . An unlighted vehicle moving upon the highway at night constitutes an unexpected or unusual obstruction to an approaching motorist." (Citation omitted.) Id., 193; *Circello* v. *Government Employees Ins. Co.*, 425 So. 2d 239 (La. App. 1982), cert. denied, 429 So. 2d 145 (La. 1983). "Operating a motor vehicle on a major highway at night without lights is the grossest kind of negligence. . . . There is a reasonable evidentiary basis in the record for the jury to determine that [the operator] was operating his vehicle without lights." (Citations omitted.) Id., 243; *Cowart* v. *Southern Farm Bureau Casualty Ins. Co.*, 273 So. 2d 357 (La. App.), cert. denied, 275 So. 2d 792 (La. 1973): "The cases of *Hardware Mutual Casualty Company* v. *Marino*, 141 So. 2d 473 (La. App. 4 Cir. 1962) and *Stutts* v. *Sistrunk*, [supra, 245 So. 2d 721], are distinguished on the facts. It was established in both cases that the oncoming vehicle did not have a headlight burning for a substantial period of time before the left turn was commenced. In the instant case, [the plaintiff] had his headlights on, and if the dimmed headlight went out before impact, it went out after the left turning motorist knew or should have known that the left turn could not be safely undertaken." *Cowart* v. *Southern Farm Bureau Casualty Ins. Co.*, supra, 359.

finding of duty. "Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 386, 650 A.2d 153 (1994). "It is for this reason that the law has rejected a literal 'foreseeability' test as the fulcrum of duty." *Lodge* v. *Arett Sales Corp*, 246 Conn. 563, 576, 717 A.2d 215 (1998). The law speaks instead of "reasonable foreseeability," a measure beyond merely anticipating the *possibility* of danger but that instead focuses on the *probability* or *likelihood* of harm. As our Supreme Court recently noted: "[O]ur threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant . . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . *Gomes* v. *Commercial Union Ins. Co.*, [258 Conn. 603, 615, 783 A.2d 462 (2001)]; *Jaworski* v. *Kiernan*, 241 Conn. 399, 405, 696 A.2d 332 (1997); see also [57A Am. Jur. 2d, Negligence § 154, p. 216] (ordinary care has reference to probabilities of danger rather than possibilities of peril). The idea of risk in this context necessarily involves a recognizable danger, based upon some knowledge of the existing facts, and some reasonable belief that harm may possibly follow. W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 31, p. 170; see also *Schiavone* v. *Falango*, 149 Conn. 293, 298, 179 A.2d 622 (1962) ([r]easonable care does not require that one must guard against eventualities which, at best, are too remote to be reasonably foreseeable). Accordingly, the fact finder must consider whether the defendant knew, or should have known, that the situation at hand would obviously and naturally, even though not

necessarily, expose [the plaintiff] to probable injury unless preventive measures were taken. *Bonczkiewicz v. Merberg Wrecking Corp.*, 148 Conn. 573, 579, 172 A.2d 917 (1961)." (Internal quotation marks omitted.) *LePage* v. *Horne*, 262 Conn. 116, 124, 809 A.2d 505 (2002).

Should a reasonable motorcyclist foresee that harm of the same general nature as that which occurred here—a daytime motor vehicle accident—is likely to result from failure to wear visibly prominent garb? The pleadings here allege no special facts that would show that it was, or should have been, foreseeable to the plaintiff that high visibility clothing was necessary in order for him to be seen. The court has no doubt that bright or reflective clothing, by its very nature, may be more likely to be seen than other apparel. It is common sense that the more brightly colored a vehicle, the more likely it is to be seen, and that increased conspicuity might diminish the possibility of motor vehicle collisions. Yet the conclusions of common sense do not tell us whether it is likely, or merely possible, that a motorcyclist will collide with a car whose driver does not see the cycle. An automobile painted in a very bright color, such as red or orange, is also more likely to be seen than cars of darker colors. If the courts were to impose a common-law duty on motorcyclists to wear high visibility clothing, is there any logical reason not to require that small cars be brightly colored? Why not also larger cars, which would become more prominent when brightly painted? The court has found no cases in which the driver of a darkly colored *automobile* is subject to a claim of comparative negligence because of the car's color. During the ordinary day, the sun provides enough illumination for a driver exercising reasonable care to see anyone, or any thing, close enough to be struck by the vehicle.

The reasonable foreseeability test requires more than anticipating the possibility of harm. Automobiles and motorcycles coexist on our highways every day. Even if motorcycles are, by virtue of their smaller mass, less likely to be seen by automobile drivers than four–wheel motor vehicles, the probability that any given motorcycle will be struck by an automobile is relatively remote. Consider the myriad of each such vehicle on the road, the vast number of opportunities each has to collide with the other and the comparatively few times such collisions occur. There is no allegation before the court that would support a conclusion that individuals operating a motorcycle should anticipate, in daylight hours or under the facts of this particular case, that it is likely or probable that automobile drivers are not going to see them.[7] On the facts before this court, it cannot be said that the plaintiff knew, or should have known, that not wearing highly prominent clothing "would obviously and naturally, even though not necessarily, expose [him] to probable injury" unless he donned visually prominent apparel as a preventive measure. The probability of harm here is too remote to be considered reasonably foreseeable.

Even if it could be said that failing to wear highly conspicuous clothing is a reasonably foreseeable cause

---

[7] Comment (b) to § 293 of 2 Restatement (Second), Torts (1965), "Factors Considered in Determining Magnitude of Risk," notes that "[a]s the extent of the chance of harm increases, the utility required to justify the risk increases proportionately. A car may be driven at fifteen miles an hour through a city street upon the least important of errands, but driving a car at sixty or seventy miles an hour can be justified only by some errand of great importance such as the extinguishment of fire or the saving of human life." Similarly, the standard treatise on torts notes that: "Those [risks] against which the actor is required to take precautions are those which society, in general, considers sufficiently great to demand preventive measures. No person can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely that the risk, though recognizable, would commonly be disregarded." W. Prosser & W. Keeton, supra, § 31, p. 170.

of car-cycle collisions, however, that would not end the duty inquiry. "[D]uty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citation omitted; internal quotation marks omitted.) *Perodeau* v. *Hartford*, 259 Conn. 729, 756, 792 A.2d 752 (2002).

In *Jaworski* v. *Kiernan*, supra, 241 Conn. 407, the court recognized four factors to be considered in determining the extent of a legal duty as a matter of policy: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging continued vigorous participation in the activity, while protecting the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. None of these factors resolves the present question. Yet our appellate courts have not used those factors as an exclusive list of considerations for determining the policy component of duty. See *Clohessy* v. *Bachelor*, supra, 237 Conn. 46 (considering social and financial costs); *Krawczyk* v. *Stingle*, 208 Conn. 239, 245, 543 A.2d 733 (1988) (considering proximity of injury to conduct complained of and resulting burden on legal profession if liability for malpractice extended to intended beneficiaries of estate).

Here the court must consider the fact that vehicular travel on our highways is a highly regulated activity.

State and federal legislators and regulators prescribe the automobile and motorcycle equipment they deem necessary for safe operation on the road,[8] but have not required motorcycle drivers to wear visually prominent clothing or manufacturers to paint motorcycles or automobiles only in bright or prominent colors. In requiring motorcycles manufactured since 1980 to have both front and rear daytime running lights, our General Assembly has already enacted legislation to increase the conspicuity of motorcycles on the road, but, despite the well–known proclivity of some motorcyclists to wear dark clothing, has not imposed a statutory duty on motorcyclists to wear prominent apparel. In light of the legislature's repeal of the helmet law, imposing a legal duty for motorcyclists to wear highly visible clothing would appear to fall within the legislature's domain.

An additional policy consideration against such a duty lies in the nature of foreseeability here. High visibility apparel would reduce the likelihood of a motor vehicle collision only if the apparel is seen by other motorists. Other motorists will see such high visibility clothing, however, only if they are looking in that direction. Yet, if they look in that direction, would they not see a motorcycle, whatever its color, unless they themselves were not paying proper attention? If visually prominent clothing reduces the likelihood of car–cycle collisions, it does so only because it causes an initially inattentive driver who should already, if paying proper attention, have seen the motorcycle, to become aware of the motorcycle. Hence, such a special defense, in

---

[8] See, e.g., General Statutes § 14-289b (c), which provides: "Any person operating a motorcycle manufactured after January 1, 1980, on a highway, shall illuminate the head lamp of such motorcycle at all times it is being operated"; see also General Statutes § 14-96d (a), which provides in relevant part: "Each motor vehicle, trailer, semitrailer and pole trailer shall carry on the rear, either as a part of the tail lamps or separately, two or more red reflectors meeting the requirements of this section. Each motorcycle shall carry at least one such reflector."

effect, would impose a legal duty on motorcyclists to anticipate that the drivers of cars may be so negligent that they will fail to see a motorcycle before their very eyes. On this point, the logic of the pedestrian cases undermines the special defense here.

In *Schmeiske* v. *Laubin*, 109 Conn. 206, 145 A. 890 (1929), for example, the court rejected a claim that an automobile driver had been negligent as a matter of law for not having seen a pedestrian who was dressed in a dark suit and was walking in the road after dark. Unlike what appears, from the pleadings, to be the circumstances here, where there are no physical, physiological or other obvious reasons why a motorcyclist cannot be seen in broad daylight, a darkly dressed pedestrian on the road at night is hard to see, even when right in front of a driver using the utmost care: "It is common knowledge that substantial objects because of their composition or coloring, and the coloring of the surface or object upon which they rest, are visible in greatly varying degrees when artificial light is thrown upon them. They are not necessarily clearly visible. . . . It is a matter of common knowledge that a pedestrian, clad in dark clothing, upon the background of a dark road, and walking in the same direction in which an automobile is proceeding which is overtaking him from the rear, will not under all circumstances be picked up by the headlights of a car at a distance of two hundred feet. . . . Because a dark object, resting upon a dark background, may not be clearly visible under all conditions at a distance of two hundred feet in front of a motor vehicle equipped with headlights which meet the statutory requirements, the failure of the operator of such a vehicle to see such object at that distance may not conclusively establish a lack of due care on his part." Id., 209–10. A motorcyclist, on the other hand, however clad, will always visible during daylight hours to those paying attention.

The possibility that other motorists may not notice a motorcycle does not, on the facts pleaded here, rise to the level of placing oneself in a situation in which one "knows or has reason to know," in the words of the Restatement, of the negligence of another.[9] 2 Restatement (Second), Torts § 466 (b) (1965). As a matter of public policy, this court does not believe it appropriate for the common law to impose liability on a motorcyclist for failing to anticipate or redress this manner of possible negligence by another driver. Doing so would be akin to anticipatory mitigation of damages,[10] a doctrine unknown to this court. Our case law teaches that the duty to mitigate arises only *after* the

---

[9] Section 466 of 2 Restatement (Second), Torts (1965), provides: "The plaintiff's contributory negligence may be either (a) an intentional and unreasonable exposure of himself to danger created by the defendant's negligence, of which danger the plaintiff knows or has reason to know, or (b) conduct which, in respects other than those stated in Clause (a), falls short of the standard to which the reasonable man should conform in order to protect himself from harm."

Comment (c) to clause (a) provides in pertinent part: "Voluntary exposure to unreasonable risk. In order that the plaintiff's conduct may be contributory negligence of the sort described in Clause (a), the plaintiff must know of the physical condition created by the defendant's negligence and must have knowledge of such facts that, as a reasonable man, he should realize the danger involved. Furthermore, the plaintiff must intentionally expose himself to this danger. He must have the purpose to place himself within reach of it. It is not enough that his failure to excerise reasonable attention to his surroundings prevents him from observing the danger, or that lack of reasonable preparation or competence prevents him from avoiding it when the condition created by the defendant is known to him. Last of all, his intentional exposure of himself to the known danger must be unreasonable. In order that it may be unreasonable it is necessary that a reasonable man in his position would not expose himself to it. This in turn depends upon the comparison between the quantum of danger, including both the probability of harm and its gravity, which the plaintiff realizes or has reason to realize will be involved in the condition created by the defendant, with the value which the law attaches to the advantage which will be lost if the danger is not encountered." Id., § 466 comment (c).

[10] Section 918 of 4 Restatement (Second), Torts (1979), uses the terminology "avoidable consequences": "(1) Except as stated in Subsection (2), one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." 4 Restatement (Second), Torts § 918 (1) (1979).

harm has occurred: "one who has been injured by the negligence of another must use reasonable care to promote recovery and prevent any aggravation or increase of the injuries." *Morro* v. *Brockett*, 109 Conn. 87, 92, 145 A. 659 (1929).

In this respect, cases rejecting a motorcyclist's or bicyclist's failure to wear a helmet as a special defense are relevant to the present case. Some of those cases reject such special defenses because they sound in failure to mitigate damages, but, as the court explained in *Ruth* v. *Poggie*, Superior Court, judicial district of Tolland, Docket No. CV93-52750S (November 22, 1993) (*Klaczak, J.*), [t]he doctrine of mitigation . . . contemplates a duty on the injured plaintiff's part which arises only after the negligence of the defendant results in the plaintiff's injury . . . . Thus, [the decedent's] duty to mitigate his damages is a duty to promote recovery from an injury that he already sustained, not a duty to prevent the injury from occurring in the first place by wearing a motorcycle helmet." *Ruth* and *Dubicki* v. *Auster*, Superior Court, judical district of New London at Norwich, Docket No. 107712 (March 8, 1996) (*Hendel, J.*) (16 Conn. L. Rptr. 301), also reject such a special defense because there is no duty to wear a helmet or protective gear. In adopting such a position, these courts considered the fact that in 1976, the General Assembly repealed a statutory requirement for motorcyclists to wear helmets and that the statutes requiring juveniles to wear helmets while riding a bicycle; General Statutes § 14-286d (b); or automobile passengers to wear seatbelts; General Statutes § 14-100a; expressly preclude failure to comply with such statutes as an element of comparative negligence.

For all the reasons previously stated, this court concludes, after considering the factors of foreseeability and public policy, that there is no common-law duty

for a motorcyclist to wear high visibility clothing during daylight hours and that the failure to do so is not a proper element of a special defense. The plaintiff's motion to strike paragraph 1 (b) of the defendant's first special defense[11] is, therefore, granted, but the balance of the motion to strike, for the reasons set forth in the footnote, is denied.[12]

[11] The plaintiff has moved to strike three separate subparagraphs of the defendant's only special defense. Each of these subparagraphs alleges a different way in which the defendant claims that the plaintiff was negligent. Whether a single paragraph of a pleading is subject to a motion to strike is a question of disagreement in the Superior Court that need not be addressed here. In the present case, the defendant did not object to the motion to strike as improper because it was directed at single paragraphs of the special defense. Instead, both parties here, just as in *Pinho* v. *Daly*, supra, Superior Court, Docket No. CV00-0500895S, "appear to treat paragraphs [(b), (d) and (e)] of the special defense as separate defenses, each embodying an entire defense in and of itself." This court will thus join the *Pinho* court in considering the motion to strike the separate paragraphs.

[12] There is no basis to strike the other challenged paragraph of the special defense that the plaintiff failed to make reasonable use of his own senses or faculties and failed to exercise the care of a reasonably prudent person. Any lack of specificity in those claims could and should have been raised by a request to revise.