LANDRY, Judge.
Defendant, Al H. German, has taken this appeal from the judgment of the trial court awarding petitioners Charles D. Arceneaux, Mary Abigail Arceneaux and Charles D. Arceneaux, Jr. damages for the alleged wrongful death of Mrs. Jacqueline Gail Arceneaux, wife and mother of petitioners, respectively. Mrs. Arceneaux’ demise resulted from injuries sustained while riding as guest passenger in a Volkswagen being driven by Mrs. Claire M. Stinson, which said car was struck from the rear by a Buick automobile owned and being driven by appellant. Named defendants are German (an uninsured motorist) and Allstate Insurance Company (Allstate), impleaded pursuant to the uninsured motorist clause contained in its policy covering the Stinson •vehicle.
In effect the trial court cast German herein on the finding that said defendant *246 was traveling too closely and not maintaining a proper lookout. In so concluding, we find the lower court committed reversible error.
In the court below Allstate deposited the sum of $5,000 (the full extent of its liability) in the registry of the court pursuant to the terms of the uninsured motorist provision of its contract covering the Stinson automobile. Allstate filed a petition in intervention claiming subrogation to the rights of petitioners against German to the extent of the aforementioned deposit. In this regard Allstate prayed for judgment recognizing that the first $5,000 of any sums awarded petitioners be paid Allstate by preference and priority.
Following trial on the merits, judgment was rendered below in favor of plaintiff, Charles D. Arceneaux, individually, against appellant in the sum of $18,000.78, and also in favor of plaintiff as natural tutor of his minor children in the sum of $10,250.00 for each said child. Allstate was granted judgment on its petition of intervention in the sum of $5,000.00, which amount was ordered paid to intervenor by preference reducing pro tanto the totality of judgments awarded petitioners. From said judgment only defendant German has appealed.
The accident in question occurred at approximately 4:25 P. M., Saturday, October 23, 1965, at the intersection of Florida Boulevard extension (Florida), also known as Baton Rouge-Hammond Highway, and Sherwood Forest Boulevard (Sherwood), an estimated two or three miles east of the city limits of Baton Rouge in East Baton Rouge Parish. Florida, the superior highway, is a four-lane thoroughfare running in an easterly-westerly direction. Its two east and two westbound lanes are separated by a neutral ground which narrows at the intersection to provide left turn lanes for both east and westbound motorists and still afford two unobstructed lanes for east and westbound through traffic. Sherwood, the intersecting street, is a four-lane roadway on the south side of Florida and a very wide two-lane thoroughfare on the north side. On both the north and south sides of Florida are situated parallel service roads or streets. Florida is elevated slightly higher than the adjacent service roads and intersecting Sherwood. Consequently, vehicles on Sherwood crossing Florida must ascend a slight rise or upward gradation. The right or south shoulder of Florida has been paved to afford a fourth lane for the convenience of eastbound drivers wishing to turn right or south from Florida onto Sherwood.
Subject intersection is controlled by five semaphore traffic signals suspended above the crossing. One light, installed in the approximate center of Florida, controls both east and westbound left turning vehicles. Over each east and westbound through lane are lights which control all through traffic on Florida as well as both north and southbound vehicles proceeding on Sherwood.
The manner in which the aforesaid devices control traffic at subject intersection was explained by Mr. Heber R. Norckauer, Assistant Traffic Services Engineer for the Louisiana Department of Highways. Norckauer testified his office supervised the installation in question which included programming the sequence of light changes. According to the witness, the assembled battery constitutes controls known to the engineering profession as a two phase full actuated signal with dual left turn units attached to a third phase. This means, he explained, it provides for movement of through east and westbound traffic on Florida, protected left turns from Florida by both east and westbound motorists and protected crossing of Florida by north and southbound drivers on Sherwood. The timing of the devices was such that through traffic on Florida in both directions was allowed a green or go interval of about 40 seconds, which timing mechanism was not dependent upon detectors. The light controlling the left turn lanes of Florida is timed for a much shorter go interval and is actuated solely by detectors placed in the left turn lanes. It remains constantly red *247 until the detectors in one of these lanes are tripped or activated by a vehicle. Thereupon a timing device ultimately produces a favorable left turn signal for east or westbound Florida drivers, simultaneously displaying red or stop signals to through traffic proceeding both easterly and westerly on Florida as well as northerly and southerly on Sherwood, thus providing completely protected left turns off Florida. He elucidated further that when the lights are green or go for east and westbound through traffic on Florida, they are red or stop for northbound and southbound traffic on Sherwood and also for both left turn lanes of Florida. When the signals are red to through traffic on Florida, they are green for north and southbound traffic on Sherwood, absent an activation of the left turn signal by the presence of a car in one of the left turn lanes. The only time the signals would be simultaneously red or stop to through traffic on Florida as well as vehicles on Sherwood would be when a left turning vehicle occupied either one or both of the left turn lanes.
Immediately prior to the collision Mrs. Stinson was proceeding easterly in the inside through lane of Florida accompanied by her guest passengers, Mrs. Arceneaux and the latter’s two small children. She was being followed by German, also traveling eastward in the same lane.
The contentions of the respective litigants may be stated in summation thusly: Plaintiffs maintain Mrs. Stinson was traveling as stated and as she approached the subject intersection the light controlling through eastbound vehicles .began to change from green or “go” to amber or “caution.” Realizing she could not negotiate the crossing before the light turned red, Mrs. Stin-son brought her vehicle to an orderly, normal stop in the inside through lane a few feet west of a white line across the eastbound lanes at or near the western parallel of Sherwood, said line indicating the stopping point for eastbound vehicles halted in obedience to a stop signal. After having been thus stopped for a few moments, the Volkswagen was struck from the rear by defendant’s automobile.
Defendant, however, avers he was driving east on Florida Boulevard in the inside through lane within the legal limit of SO miles per hour and keeping an alert lookout ahead. He was preceded by a standard American make car traveling easterly in the same lane, which vehicle he was following at an estimated distance of four or five car lengths or 75 to 80 feet. Traveling in this fashion, both vehicles approached the intersection on a green or favorable signal. Suddenly, the car ahead veered sharply from the inside to the outside lane whereupon German, for the first time, observed the Stinson car stopped ahead in the inside lane in the approximate center of the intersection. Appellant immediately applied his brakes full force but slid forward sufficiently to strike the Volkswagen in the rear.
Tersely put, plaintiffs maintain the accident resulted from appellant’s fault in trailing too closely behind the Volkswagen which made a normal stop in obedience to an unfavorable traffic signal. Additionally, it is maintained defendant failed to keep a proper lookout and could have swerved to the right in time to have avoided contact with the Stinson car. Plaintiffs also argue defendant was traveling at an excessive rate of speed and invoke the rule that in general when a following vehicle collides with the rear of a car ahead, the following driver is presumed to be at fault and bears the burden of exculpating himself from negligence.
In defense, appellant contends he was free of fault in any manner whatsoever. In so stating, appellant relies upon the well established rule that a driver has a right to assume a motorist ahead will, when stopping suddenly, use every precaution to avoid being struck from the rear by following vehicles and that the driver of a following vehicle is not responsible for a *248 rear end collision where the lead car creates an unanticipated hazard.
In essence Mrs. Stinson testified substantially in accord with plaintiffs’ version of the accident as above set forth. Although she received a head injury producing amnesia which erased recollection of all events transpiring after she stopped, she was certain she made a normal stop in the inside through lane in compliance with a stop signal. There appears, however, some confusion in her testimony regarding the position of the light in obedience to which she stopped. In a deposition taken prior to trial, she gave evidence which tended to indicate she stopped because the light in the center of the intersection (the left turn light) was red. At the trial, however, she was sure the light she meant was the one suspended over the inside eastbound lane.
Appellant testified in effect he was proceeding easterly at a speed of about 45 miles per hour following a vehicle ahead in the same lane. As both cars approached the intersection on a green light, the lead vehicle suddenly, and without warning, veered to the outside through lane at which time defendant first noted the Volkswagen stopped ahead in the center •of the intersection. Defendant further ■stated he was unable to swerve to the outside through lane because of the presence of eastbound traffic therein to the immediate rear of his own vehicle. He also stated that just before he observed the Volkswagen, he saw a small red sports car dart suddenly across the intersection from north to south ahead of the Volkswagen and he believed this circumstance may have been the reason for Mrs. Stin-son stopping in the center of the crossing.
Mrs. Mary S. Perry, called on behalf of plaintiffs, stated that at the time of the accident she was stopped on the paved shoulder of Florida (the right turn lane) heading easterly, waiting for a favorable signal to turn right or south onto Sherwood. She stated the outside eastbound lane was clear of traffic and Mrs. Stinson’s Volkswagen was stopped in the inside eastbound lane at or near the white line which designated the stopping point for eastbound vehicles. Mrs. Perry was positive the Volkswagen was not stopped in the intersection. She did not see a sports car dart across the intersection in the path of the Volkswagen. Neither did she observe the presence of either the Salemi or McCants automobiles hereinafter discussed. She saw the actual impact which occurred when the Volkswagen was stopped; at the moment of collision the light facing Mrs. Stinson was red.
On behalf of plaintiffs, Miss Lorraine Salemi testified she was stopped facing north between Florida and the service road on the south. She intended to cross Florida and drive westerly but was stopped for a red signal. She observed the Volkswagen also stopped in the inside eastbound lane near the white restraining line — not within the intersection proper. She also observed German approaching at what she termed a fast rate of speed which she estimated at about 45 miles per hour. Miss Salemi saw the impact but did not recall hearing the noise made by the brakes on defendant’s automobile. The force of the impact knocked the Volkswagen forward to about the center of the intersection. Defendant’s car moved only a few feet forward after the collision. The witness did not observe any car between defendant’s Buick and the Stinson Volkswagen, Miss Salemi did not observe any car dash across the intersection in the path of the Volkswagen. Nor did she see Mrs. Perry's car parked in the right turn lane on Florida.
Miss Antoinette Salemi, guest passenger in the car being driven by her sister, Lorraine, testified that as her host driver approached Florida she stopped between Florida and the service road. Although Miss. Salemi could not see the traffic light because of the incline on which the vehicle sat, she assumed her host driver stopped in compliance with a red traffic signal. She observed the Volkswagen come to a *249 normal stop in the vicinity of the white line across Florida. The witness also stated she noted the approach of the German car, saw defendant apply his brakes and observed the Buick strike the Volkswagen from the rear knocking the latter vehicle past the center of the intersection. She did not see a sports car rush across the intersection in front of the Volkswagen. Neither did she observe the Perry car to her left or the McCants’ vehicle stopped on the north side of Florida. She also testified the Buick traveled very little following the impact. As she explained it, defendant’s car proceeded forward only about enough to occupy the spot on which the Volkswagen stood.
Appearing in defendant’s behalf, Mrs. Agnes T. McCants stated she was proceeding easterly on the service road to the north of Florida. She intended to turn southerly onto Sherwood and as she began her turn from the service road, she observed the. Volkswagen proceeding easterly. She also stated that after completing her turn onto the ascending ramp which ran from the service road to Florida, she stopped facing southerly as she was confronted with a red light. According to the witness, the Volkswagen stopped so suddenly in the center of the intersection beneath the traffic signals, the occupants slumped forward out of sight giving the impression the vehicle was unoccupied. Her testimony regarding the sports car is contradictory in some respects. The substance of her evidence in this regard is that she was not certain that such a vehicle crossed ahead of Mrs. Stinson but was told by her young son who accompanied her that such a car crossed Florida Street. Mrs. McCants wondered why Mrs. Stinson suddenly stopped in the middle of the intersection. She estimated the speed of German’s car at between 45 and 50 miles per hour. She repeatedly expressed the view the accident was unavoidable insofar as defendant was concerned. In a statement to the investigating officer, however, she stated she saw a sports car dash across Florida on a red light ahead of the Volkswagen but did not know whether it crossed from the north or south side. It is of considerable significance that neither this nor any other witness observed a vehicle in either left turn lane on Florida.
Larry D. Herring, City Policeman, City of Baton Rouge, investigated the accident and reported thereon. He stated the German automobile left 82 feet of skid marks preceding the point of collision. Based on physical evidence personally observed including debris, fluids, a hub cap, a small mound of dirt and the positions of the vehicles which were not moved prior to his arrival, he concluded the point of collision, by actual measurement, occurred 20 feet east of the west parallel of Sherwood, more than 26 feet east of the white line where the Volkswagen allegedly stopped. The witness also testified the skid marks left by defendant’s Buick were in a straight line from their point of beginning to the spot of collision. He expressed the view defendant was following too closely.
The trial court found the accident occurred while the Stinson and German vehicles were presented with a green or go traffic signal. He also concluded that at the moment of impact the Stinson car was stopped in the left through lane in the approximate center of the intersection. With both these conclusions we concur. This determination is bitterly assailed by counsel for plaintiffs who argues that the testimony of Mrs. Perry, Mrs. Stinson and the Misses Salemi preponderates in favor of the finding that Mrs. Stinson stopped to the west of the restraining line on Florida. We are of the view, however, the immutable and undisputed physical evidence testified to by Officer Herring establishes beyond doubt the collision occurred virtually in the center of the crossing. It was there he found such unmistakable evidence of the point of impact as debris, fluids from the vehicles, dislodged dirt and a hubcap. This finding is further corroborated by additional physical evidence in the form of skid marks left by defendant’s car. These begin west of *250 the intersection and continue well into the crossing terminating at what is unquestionably the point of impact. If, as plaintiffs contend, Mrs. Stinson was stopped west of the intersection, the skid marks would have ended at or very shortly after the point of impact and would not have continued to the approximate center of the crossing. In this connection it is clear beyond doubt that defendant’s vehicle proceeded only a few feet following impact. Not only do all witnesses agree on this circumstance, but the fact is also established by the position of the cars following the accident. As Miss Salemi put it, the Buick merely took the place formerly occupied by the Volkswagen; photographs in evidence depict the Buick at rest almost beneath the traffic signals. Additionally, photographs in evidence establish the impact to be relatively light. Although considerable damage was done the rear of the Volkswagen (a small foreign make automobile), the Buick was only slightly marred, the force of the impact did not even break the headlights of defendant’s car notwithstanding its front struck the Volkswagen squarely from the rear.
From the testimony before us the only logical conclusion to be drawn is that German was proceeding on a green or favorable signal. Not one witness recalled observing an automobile in either left turn lane to activate the left turn signal. Since the presence of a left turning vehicle in one of the left turn lanes is the only circumstance under which the signals would be simultaneously stop for both through traffic on Florida and crossing vehicles on Sherwood, and since both Mrs. McCants and Miss Salemi were stopped in obedience to red signals facing drivers proceeding each way on Sherwood, it necessarily follows the signal for through vehicles on Florida was green. This also accords with the testimony of both Misses Salemi who stated that immediately before the impact several cars passed through the intersection proceeding easterly on Florida. It is reasonable to assume said vehicles were advancing on a green signal.
The trial court found Mrs. Stinson guilty of negligence in suddenly stopping in the intersection for some unknown reason and with this determination we are likewise in agreement. However, we are not herein concerned with Mrs. Stinson’s dereliction as she is not a party to these proceedings. Nevertheless, her actions are significant in determining the liability of appellant herein.
Counsel for plaintiffs cites numerous authorities including inter alia, DeGregory v. State Through Department of Highways, La.App., 192 So.2d 834, and Self v. State Farm Mutual Automobile Insurance Company, La.App., 183 So.2d 68, which expound the rule that a following motorist must ever maintain a sharp lookout ahead, is charged with the obligation of great care, and should drive at such distance behind the lead vehicle as to be able to stop in the event the preceding driver stops. While we are in absolute accord with these well established rules of law, it is basic law that each such case must be decided in the light of its own peculiar facts and circumstances.
The foregoing rule is, however, subject to the long established and well recognized exception that the following motorist is only required to drive at such distance behind the lead vehicle and at such speed as will allow a timely stop under circumstances reasonably anticipatable. Nomey v. Great American Indemnity Company, La.App., 121 So.2d 763. Admittedly the cited authority is not factually apposite to the case at bar; it is cited merely as authority for the rule it announces.
 More nearly analogous to the instant cause is Logue v. O'Donley, La.App., 190 So.2d 653, which involved an accident wherein the following motorist was trailing the lead vehicle by approximately 35 to 40 feet while traveling 30 to 35 miles per hour. *251 There the following driver was exonerated of the charge of traveling too closely. In the Logue case the court again applied the exception to the applicable rule and held the following driver free of negligence where the vehicle ahead creates a hazard which the following driver may not be reasonably expected to anticipate. In other words, the exception recognizes that where a sudden not to be anticipated emergency is created by the forward vehicle, the driver to the rear is not held to the high degree of care otherwise exacted. The basis for the exception is the common sense principle that the following driver may expect reasonable compliance by the lead driver with the rules of the road and is therefore only required to drive at such distance and speed as will permit his safe coping with the usual and ordinary movements of a motorist properly using the highways. Adams v. Morgan et al., La.App., 173 So. 540. See also Taylor v. Genuine Parts Company et al., La.App., 192 So.2d 241.
In the case at hand, defendant was proceeding within the lawful limit on a multilane highway. He approached and was preparing to enter the crossing on a favorable signal. He was entitled to rely on the assumption that forward motorists, similarly proceeding, would not suddenly stop upon the highway without notice or warning.
Since we find the case at bar comes within the hereinabove announced exception to the general rule usually applicable to following motorists, it matters not whether an intervening vehicle obstructed defendant’s view (as he contends) or whether, as plaintiffs maintain, there was no such third vehicle. In either event, it appears clear defendant observed the presence of the Volkswagen stopped upon the highway as soon as practical under the attending circumstances. That defendant was alert and watchful of the roadway ahead is attested by the fact that he reacted to the emergency created by Mrs. Stinson while still a considerable distance from Mrs. Stinson’s stopped car. Considering the distance traveled during reaction time, and the fact that defendant’s car left 82 feet of skid marks prior to point of impact, it is clear that defendant noted the emergency while still more than 100 feet distant from the Volkswagen.
Counsel for plaintiff argues and cites Neville v. Postal Telegraph Cable Co., 13 La.App. 76, 126 So. 720, as authority for the contention defendant should be found guilty for not seeing the stopped Volkswagen even if an intervening car existed as defendant claims. .As hereinabove pointed out, it is immaterial whether said intervening car was present or not. The emergency was created by the driver of the Volkswagen; it was not of such nature as could reasonably be expected by an ordinarily prudent driver; the force of the impact was relatively slight attesting a reasonable rate of speed on defendant’s part; defendant’s reaction in attempting to stop .by applying his brakes rather than swerve to the outside lane was that of an ordinarily prudent driver under the circumstances.
For the reasons hereinabove set forth, the judgment of the trial court in favor of plaintiff Charles D. Arceneaux, individually and as tutor of the minors Mary Abigail Arceneaux and Charles D. Arceneaux,- shall be and the same is hereby annulled, reversed and set aside and judgment rendered herein for defendant Al H. German dismissing and rejecting said plaintiffs’ claims at plaintiffs’ cost. All costs of this appeal to be paid by plaintiffs-appellees.
Reversed and rendered.