BOUTALL, Judge.
Plaintiff, Robert M. Dupas, Jr., filed suit seeking recovery of damages for injuries sustained as a result of being struck by a New Orleans Police Department vehicle driven by Officer William 0. Brown on the night of October 15, 1973. Defendants in the suit are the City of New Orleans, owner of the police vehicle, Brown, the driver of the vehicle, and Travelers Insurance Company, the liability insurer of the city. After trial on the merits, judgment was rendered in favor of defendants, dismissing plaintiff’s suit. Plaintiff appeals.
On the night of October 15, 1973, the plaintiff and his brother-in-law, Allen Knickmeyer, rode the plaintiff’s motorcycle to the overpass over Interstate Highway 10, known commonly as the “third turnaround”. The overpass is located in the marshlands of eastern New Orleans 2.9 miles east of Michoud. It is connected to I — 10 with exit and entrance lanes, and is used primarily as a turnaround and by fishermen locally in the area. It receives little vehicular traffic due to the fact that the roadway of the overpass does not connect with any other roads.
The plaintiff and Knickmeyer arrived at the overpass some time after dark in the early evening. They parked the motorcycle in the 3 foot wide emergency lane on the east or Slidell side of the overpass. The two men then took turns using a pair of binoculars to look for UFO’s which had been reported to have been seen in the area. The record discloses that prior to the accident only one vehicle drove upon the overpass. That one vehicle was a police department emergency unit, or crash truck, driven by Sgt. Elmo Boepple. Boepple testified that he was driving with his lights on and that he could see the reflectors on the motorcycle and the two men on the overpass, that he slowed his vehicle, that the plaintiff who was in the roadway saw him and moved out of the roadway as the crash truck approached. Boepple asked them what they were doing there on the overpass and chatted with the two men for several minutes and then left after telling them “to be careful and to stay out of the street”. The two men resumed their lookout for UFO’s.
At about 9:15 P.M., approximately 20 minutes after the departure of the crash truck, the unlighted vehicle driven by Officer Brown struck the plaintiff while he was in the traffic lane of the overpass. The collision caused the plaintiff to be thrown onto the hood of the car and his head struck the windshield of the car. Immediately, Brown came to a stop and the plaintiff rolled off the hood and onto the pavement. In response to Brown’s call for assistance, Sgt. Boepple was dispatched to the accident *324 scene and transported plaintiff to the hospital where doctors diagnosed a closed injury to the brain. Due to the fact that the plaintiffs brain tissue was swollen, the doctors performed a temporal lobotomy and excised a swollen portion of the brain described as the size of a fist.
The trial judge found that the driver was negligent and that the pedestrian was con-tributorily negligent and made the following finding from the bench:
“The best way I know how to state what I believe the legal position in the case is that both of these parties, the plaintiff and the defendant, while they were both negligent and significantly negligent, neither one has any way to anticipate that the other one would be doing what he was doing at the moment of the impact and of the accident. There is no question in my mind that if the police car’s lights were on the accident would not have occurred. There is also no question in my mind that if Mr. Dupas had been using the pedestrian area for example or had simply been aware of what was going on around him as opposed to looking in the binoculars the accident would not have occurred. Both of them were significantly, actively negligent up to the moment of impact.”
The record discloses that plaintiff Dupas was not able to testify completely as to the events surrounding the collision because he suffered loss of memory as a result of the injuries received. A number of experts were called to testify to the different aspects of the case but the basic result is controlled by the testimony of the other two eye-witnesses, the driver Brown, and the plaintiff’s brother-in-law, Knickmeyer.
Officer Brown testified that he was on duty with the ecology squad searching for illegal hunters in the area and had used this overpass as a vantage point for observation to help him in his duties. Shortly before the accident, he had driven off of the Interstate Highway onto the overpass with his lights on from the side opposite to that which the plaintiff and later Sgt. Boepple had used, and as he approached towards the crest he parked his vehicle and turned off the lights at a point subsequently determined to be 100 feet or more from the two pedestrians. Brown stepped out of his vehicle and watched for possible violations for about 15 minutes. He then spotted a suspicious vehicle with a light shining from the window on the side of the approach road he had used and decided to get into his vehicle, cross over the overpass to the far side and turn around in hopes of intercepting the suspicious vehicle. For secrecy purposes, Brown had placed tape over the lights of the 2-way radios in his car so that no light would be reflected up into the windshield, and as a further measure he had a switch that enabled him to turn off his brake and tail lights while the car was moving.
In furtherance of his purpose, Brown started his car up and drove off without turning his headlights on at a speed of 15 to 20 miles per hour when he was suddenly confronted with plaintiff standing in the roadway only 10 feet in front of his car, binoculars raised to his eyes and peering into the skies. As Brown began applying his brakes, the vehicle struck the plaintiff, throwing him up onto the hood and windshield. Fearing that a sudden stop would cause plaintiff to be thrown off the side of the overpass, Brown slowed gently and veered slightly to his left to center the vehicle in the roadway. He testified that he was not able to see the motorcycle until after he struck plaintiff, and that he did not see Knickmeyer at that time because Knickmeyer was sitting down alongside the motorcycle hidden from view. He asserts that plaintiff was standing in his traffic lane at the time of the collision, wearing dark clothes, and looking through the binoculars into the sky, and apparently was never mindful of Brown’s approach.[1]
As opposed to this testimony, Knickmeyer testified that he and Dupas were never *325 aware of Brown’s vehicle having come up on the overpass and parked. He states that he and Dupas had been taking turns watching for UFO’s, and that Dupas was now taking his turn to look and while doing so, Knickmeyer decided to relax and smoke a cigarette. For this purpose he sat up against the rail in the emergency space off the travelled roadway on the New Orleans or western side. As he sat there smoking, suddenly an unlighted car flashed by him and struck Dupas before he could raise any warning. At that time Dupas was crossing the overpass from west to east and was on the eastern side of the roadway, the traffic lane opposed to that in which the defendant should have been driving.[2] He could not say whether Dupas actually had the glasses raised to his eyes at the time, although Dupas was not standing in the roadway but proceeding across it, giving an inference that he was not looking through the binoculars at the time.
The negligence of defendant Brown is apparent from his own testimony. He has admitted driving without lights in violation of LSA-R.S. 32:301. While it is true that he is a police officer in the discharge of his official duties, he also has a duty to the public to act in safety, and under the circumstances above mentioned, we cannot condone proceeding across an overpass in darkness and consider that it is the act of an ordinarily prudent man who has due regard for the safety of others. It is quite clear from the wording of the statute that its purpose is to protect life and property on the highways by requiring motorists to use headlights to aid them in discovering persons and vehicles on the highway, and to make others aware of their presence. It is evident that the harm suffered by plaintiff in this case is clearly the type of risk and harm intended to be prevented by enactment of the statute, and falls within its scope and protection. Under such conditions, the violation of the statute is negligence per se. Independent of the law, it is the grossest kind of negligence. Normand v. Piazza, 145 So.2d 110 (La.App. 4th Cir. 1962).
We have more difficulty in assessing the negligence of plaintiff Dupas. However the record does support the finding of the trial judge that he was in the roadway with his glasses raised, oblivious of any approaching traffic. We are convinced that he was standing in the roadway paying no attention to possible traffic but concentrating on his search for UFO’s, despite having been previously warned by Sgt. Boepple to stay out of the roadway. This activity is not consistent with the duty of ordinary care imposed upon him. Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, the standard being that of a reasonable man under like circumstances.
Alternately, plaintiff contends that defendant had the last clear chance to avoid the accident. The record shows that the opportunity to see and avoid was equally available to the parties. The doctrine of last clear chance is like a two-edged sword, applicable equally to the rights of the defendant and those of the plaintiff. Ortego v. State Farm Mutual Automobile Ins. Co., 295 So.2d 593 (La.App. 3rd Cir. 1974). Where both parties are inattentive and neither is aware of the other in time to take effective evasive action the doctrine does not apply. Burge v. Doty, 279 So.2d 273 (La.App. 2d Cir. 1973). Additionally, it has been held that where the defendant could not see plaintiff and the negligent plaintiff is not helpless to save himself, but is only inattentive to his surroundings, he has no right for reimbursement for loss occasioned by his own inattentiveness. Kraft v. U. Koen & Company, 188 So.2d 203 (La.App. 4th Cir. 1966).
The judgment is affirmed.

AFFIRMED.

. Dupas testified that he was not aware of being struck by a car. The last he remembers is seeing a white star through his binoculars.

. The investigating officer placed the collision in Brown’s lane.