387 So.2d 1235 (1980)
Henry BAPTISTE
v.
Mary Jo GRANADA.
No. 13414.
Court of Appeal of Louisiana, First Circuit.
June 9, 1980.
*1236 Norman L. Haymer, Jr., Baton Rouge, for plaintiff.
Gracella Simmons, Baton Rouge, for defendant.
Before COVINGTON, LOTTINGER and COLE, JJ.
COLE, Judge.
This is an appeal by the defendant, Mary Jo Granada, from a judgment in favor of the plaintiff, Henry Baptiste, in the sum of $1,117.97, with interest and at defendant's costs. We affirm.
The suit arises out of a motor vehicular accident on the busy streets of the City of Baton Rouge during a rush hour on Tuesday, July 3, 1979, the accident occurring in the 200 block of St. Ferdinand Street about 4:30 p. m. The accident was alleged to have happened when defendant's Monza car abruptly changed traffic lanes directly into the path of an Oldsmobile automobile driven by Edith Williams, necessitating her to brake her automobile suddenly, which maneuver in turn caused the plaintiff's Cadillac to run into the rear of the Williams vehicle, resulting in property damage to the Cadillac in the amount of $1,117.97.
After hearing the evidence and considering the arguments of counsel, the trial judge found that the mishap was caused by "the fact that Miss Granada attempted to change lanes before the way was clear." The judge also found that Mr. Baptiste was not guilty of contributory negligence in that "the maneuver that Miss Granada made was [not] reasonably foreseeable", and was not a maneuver which a reasonable person should, under the circumstances, have expected. We agree. We have carefully reviewed the record and find that it amply supports the trial judge's factual findings. There is a reasonable factual basis for the finding in the trial court; and we determine that the record establishes that the finding is not manifestly erroneous. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The record establishes that Miss Granada attempted to change lanes from the right (outside) lane to the left (inside) lane in which the Williams and Baptiste vehicles *1237 were proceeding at a reasonable rate of speed, and that this maneuver was attempted when the Williams car was no more than two or three car lengths, or at least was reasonably close, behind her in the left lane.
Miss Granada testified in part as follows:
"Q. Now, Miss Granada, I believe your words were that you didn't really see Ms. Williams' vehicle?
A. Right.
Q. Earlier you testified that she was directly on the side of you somewhat to the rear of your vehicle, is that correct?
A. I don't understand what y'all asking.
Q. How far behind your vehiclehow far behind your vehicle was Ms. Williams' vehicle?
A. I didn'tI didn't see her until Ishe blew her horn and it wasit was kind of like in the back of the car, the back end of my car.
Q. Would you consider her vehicle being in the blind spot?
A. Right.
Q. Okay. The front of her vehicle was alongside of your backback of your vehicle?
A. I'm not sure. I don't really remember. It happened about six months ago."
She continued:
"Q. Okay, you said you looked in the rearview mirror, which mirror? Was it the outside mirror?
A. No, the
Q. Just-the rearview mirror inside?
A. Uh-hum, yes, sir.
Q. And you weren't able to see the car driven by Ms. Williams?
A. No, sir.
Q. She was in the blind spot I believed you testified?
A. Right.
Q. Did you turn around and look to see
A. Yeah. I didn't turn completely. I just kind of looked like that
Q. And you didn't see anybody?
A. Right.
Q. All right. How far over in that lane did you get before you heard the horn?
A. Like mymy left front tire and maybe a little more. I'm not really sure.
Q. Would you describe the maneuver that you made? Was it gradual?
A. Yeah, it was gradual.
Q. It was nothing abrupt or anything?
A. No, sir.
Q. All right, what about the maneuver you made after you heard the horn, was that an abrupt turn back into your lane?
A. Yes, sir, `cause it scared me like.
Q. That you was that close toit was a near, in fact you almost had an accident with her, is that correct?
A. I don't really remember how close it was but, you know, when I heard the horn, it just scared me and I got back over.
Q. Yanked it back over?
A. It was pretty close I guess.
Q. And that's when you heard the brakes?
A. Right.
Q. Was it an accidentdo you feel that the accident would not have occurred had you not made that maneuver? Is that what you said?
A. (No audible response)."
The applicable statute is LSA-R.S. 32:79, which provides:
"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply.
"(1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

*1238 "(2) The department may erect signs directing slow moving traffic to use a designated lane or designating those lanes to be used by traffic moving in a particular direction, and drivers of vehicles shall obey the directions of such signs."
The record supports the conclusion that Miss Granada attempted to change lanes without first ascertaining if the maneuver could be safely executed, and that her negligence was the proximate cause of the accident. Vicknair v. Olin, 371 So.2d 360 (La.App. 4 Cir. 1979); Trabeaux v. Sanchez, 279 So.2d 793 (La.App. 4 Cir. 1973).
The defendant next argues that the trial judge erred in failing to find the plaintiff guilty of contributory negligence, because of the established jurisprudence that a following motorist is presumed negligent if he collides with the rear of a leading motorist, as it is generally assumed that he has failed to maintain a proper lookout or that he was following too closely. Welch v. Thomas, 263 So.2d 427 (La.App. 1 Cir. 1972), writ refused, 262 La. 1132, 266 So.2d 434 (1972); Arceneaux v. German, 207 So.2d 244 (La.App. 1 Cir. 1968), writ refused, 252 La. 110, 209 So.2d 40 (1968).
However, it is equally well established that the presumption of fault on the following motorist may be overcome by showing that the following motorist was put in a "sudden emergency" situation to which he has not negligently contributed and during which he used the best judgment under the circumstances. Salemi v. St. Paul Fire & Marine Insurance Co., 339 So.2d 1264 (La.App. 1 Cir. 1976), writ refused, 342 So.2d 674 (La.1977). The facts established by the record reveal that Miss Granada created a sudden emergency situation by abruptly attempting to change her traffic lane without first ascertaining if the way was clear for her to execute such a maneuver; and that Mr. Baptiste did all that he could under the circumstances, but was just unable to brake his car in time to avoid striking the immediately preceding Williams vehicle which stopped abruptly when Mrs. Williams "jammed" on her brakes to keep from hitting the Granada Monza automobile. Mr. Baptiste testified that "there was a car in the right lane next to me and as the lady (Mrs. Williams) in front of me hit her brakes, I tried to hit mine and go around her to keep from hitting her from the rear . . . ." (R 47) He also stated that he was about one-to-two car lengths behind the Williams Oldsmobile just prior to the accident. There was no damage done to the Monza or the Oldsmobile in the accident, although the latter was struck in the rear (there was no contact made with the Monza).
We find, as did the trial judge, that the plaintiff's evidence overcame any presumption of fault on his part and showed that he did not negligently contribute to the accident.
For the foregoing reasons the judgment of the lower court is affirmed; costs of this appeal are to be borne by the appellant.
AFFIRMED.