425 So.2d 239 (1982)
Ronald G. CIRCELLO
v.
GOVERNMENT EMPLOYEES INSURANCE COMPANY, et al.
No. 82 CA 0265.
Court of Appeal of Louisiana, First Circuit.
December 21, 1982.
Writ Denied February 23, 1983.
*240 Paula Cobb, Arthur Cobb, Baton Rouge, for plaintiff-appellant Ronald G. Circello.
Charles W. Wilson, III, Baton Rouge, for defendant, third party plaintiff and third party defendant-appellee Geico and Lafferty.
Brent E. Kinchen, Baton Rouge, for defendant, third party plaintiffs and third party defendants-appellees Mid-American and Burton.
Kenneth E. Barnette, Baton Rouge, for defendant-appellee Prudential.
Dorothy D. Thomas, Boris Navratil, Baton Rouge, for defendant-appellee Casualty Reciprocal.
Daniel R. Atkinson, Baton Rouge, for defendant-appellee Allstate Ins. Co.
Before COVINGTON, LEAR and LANIER, JJ.
LANIER, Judge.
This is a suit for damages in tort arising from a three car automobile accident. A trial by jury resulted in findings that the negligence of the drivers of all three vehicles caused injury to the plaintiff. The plaintiff's damages were fixed at $3,000. Judgment was rendered in the trial court against the insurers of the three drivers in solido for the amount of the jury award. Judgment was also rendered dismissing the plaintiff's claim against his underinsured motorist's carrier and his claim against the excess insurer of one of the drivers. The plaintiff took this devolutive appeal asserting (1) that counsel for one of the defendants made improper comments concerning *241 him which adversely affected the jury, and (2) that the damage award was inadequate. The insurers of two of the drivers answered the appeal asserting that their insureds were not liable for the plaintiff's damages. One of the appealing insurers alleged in the alternative that the damage award was excessive and should be reduced.

I. FACTS
On October 14, 1979, at approximately 5:30 A.M., James T. Jones, Jr. was operating a 1973 Chevrolet automobile owned by his mother, Grace F. Jones, in an easterly direction on the Airline Highway at its intersection with Plank Road in East Baton Rouge Parish, Louisiana. Airline Highway is a four-lane highway running generally in an east-west direction at this point. There were two guest passengers in the Jones vehicle, Candice Matherne,[1] who was in the right front seat, and the plaintiff, Ronald G. Circello, who was in the right rear seat. The primary coverage on the Jones vehicle was carried by Grace F. Jones with Casualty Reciprocal Exchange (Exchange). James T. Jones, Jr. had individual liability coverage with Prudential Property and Casualty Insurance Company (Prudential), which was excess coverage on the Jones vehicle. Circello carried underinsured motorists coverage with Allstate Insurance Company (Allstate).
At the same time and place, Christine P. Burton was operating a 1978 Chevrolet Nova owned by her in an easterly direction on the Airline Highway behind the Jones vehicle. Gary Breaux was a passenger in the Burton vehicle. Mid-American Casualty Company (Mid-American) was the liability insurer of Burton and her vehicle.
Jeffrey W. Lafferty was operating a 1973 Dodge Polara owned by him in an easterly direction on Airline Highway behind the Burton vehicle. There were no passengers in this vehicle. Lafferty and his vehicle were insured by the Government Employees Insurance Company (GEICO).
Jones was driving in the right (outside) lane of the two eastbound lanes of travel and approached a Toyota automobile which appeared to be either stopped or moving very slowly. Jones pulled into the left (passing) lane and commenced passing the Toyota. Burton was in the left (passing) lane behind Jones, and when she observed his vehicle in front of her, she determined that she was unable to slow down sufficiently to avoid a collision and drove her vehicle between the Jones vehicle in the left lane and the Toyota in the right lane. During this maneuver, there was a relatively minor contact between the side of the Burton vehicle and the right rear of the Jones vehicle. Lafferty was following the Burton vehicle in the left lane. When the Burton vehicle veered to the right and proceeded between the Jones vehicle and the Toyota, Lafferty was unable to sufficiently brake his vehicle and there was a severe collision between the front of the Lafferty vehicle and the rear of the Jones vehicle. Burton stopped her vehicle and returned to the scene of the accident. The Toyota automobile left the scene of the accident and its driver was never located.

II. IMPROPER QUESTIONING BY COUNSEL
Circello contends in this appeal that improper questioning by counsel for Allstate prejudiced the jury and resulted in an inadequate damage award. The transcript reveals that the following took place during the trial:
"Q. Mr. Circello, have you ever served in the military?
"A. Yes, sir, I have.
"Q. And it's correct, isn't it, that you were discharged from the military with less than honorable conditions?
"A. No, sir, that is not correct. I have honorable conditions.
"Q. Weren't you discharged with a general discharge?
"A. Yes, sir, I was. General under honorable conditions.

*242 "Q. Isn't it a fact that you went A.W. O.L. and charges were brought against you so you could be discharged so you would not have to serve in Vietnam?
"MR. COBB: I object, Your Honor. This has nothing to do with cross-examination. He has acknowledged this. He's the one that told this lawyer at the deposition, and all it can be is to prejudice the jury against Mr. Circello.
"THE COURT: I sustain the objection. Ladies and gentlemen of the jury, you're ordered by the Court here to disregard the question that was asked by counsel. Do not answer the question."
Counsel for Circello did not object to the first three questions propounded by counsel for Allstate concerning Circello's military record. The failure of Circello's counsel to object to these questions constitutes a waiver of his right to complain of them on appeal. Temple v. Liberty Mutual Ins. Co., 330 So.2d 891 (La.1976); Belaire v. Vanderbrook, 405 So.2d 1143 (La.App. 1st Cir.1981), writs denied 407 So.2d 749 (La. 1981) and 409 So.2d 659 (La.1982).
When counsel for Circello objected to the fourth question propounded by counsel for Allstate concerning Circello's military record, the trial judge sustained the objection, instructed the jury to disregard the question, and instructed the witness not to answer the question. At the conclusion of the trial, the judge instructed the jury to judge the case without regard to any passion, sympathy, or prejudice, and that all parties in the case stood as equals before the court. The actions taken by the trial judge on the objection by counsel for Circello were correct and proper. Temple v. Liberty Mutual Ins. Co., supra; Sanchez v. LeBlanc, 400 So.2d 349 (La.App. 4th Cir. 1981), writ denied 401 So.2d 991 (La.1981).
Even if the actions of the trial judge constituted error that improperly influenced the jury's verdict, nevertheless, this court must undertake an independent evaluation of the facts and adjudicate the controversy before us. Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).

III. LIABILITY OF JAMES T. JONES, JR. (EXCHANGE)
The insurer of Jones, Exchange, answered the appeal of Circello claiming that the jury was clearly wrong in determining that the negligence of Jones was a cause of the accident and injuries to Circello.
Jones testified that he was proceeding in the right (outside) lane of the Airline Highway. He observed a slow moving and weaving Toyota in his lane of travel and slowed to a speed of approximately 20-25 miles per hour. He did not observe any vehicle behind him, put on his left blinker, and pulled into the passing lane. He was struck 8-10 seconds later. The first impact that he felt "really wasn't a big jolt", but the second impact occurring 2 or 3 seconds later was much harder. Jones testified that his car lights were on at this time.
The plaintiff, Circello, testified that he observed a slow moving vehicle ahead of the Jones vehicle in the outside lane. Jones slowed to approximately 35 miles per hour and started his passing maneuver. The first impact that he felt was minor. The second impact threw him into the back of the front seat, the seat broke and then fell back on him. Jones had his lights on.
Candice Matherne was asleep at the time of the accident and was awakened by the first impact.
Christine P. Burton testified that she was driving her Chevrolet Nova in the left (passing) lane with her headlights on low beam. She did not see the Jones vehicle until she was almost on it. To avoid a collision, she went between the Jones vehicle and the Toyota, but sideswiped the Jones vehicle in the process. The Jones vehicle did not have its lights on and appeared almost stopped in the roadway.
Jeffrey W. Lafferty testified that he was proceeding on the Airline Highway in the left (passing) lane at a speed of approximately 55 miles per hour. He had been following the Burton vehicle for approximately 1 mile at a distance of approximately *243 4 car lengths. He observed the Burton vehicle swerve to the right and he then saw the Jones vehicle for the first time. He could not turn to the right because the Toyota was located in that position. He was unable to bring his vehicle to a halt before colliding with the rear of the Jones vehicle. Lafferty had his headlights on. Lafferty did not recall if the Jones vehicle had its lights on. The Jones vehicle was going about 10 miles per hour at the time of the collision.
Although Jones testified that he did not observe any vehicles approaching behind him prior to commencing his lane change and/or passing maneuver, obviously both the Burton and Lafferty vehicles were there approaching him with their headlights on. Based on the evidence presented, the jury could reasonably conclude that Jones failed to see that which he should have seen and attempted the lane change and/or passing maneuver when it was not safe to do so. La.R.S. 32:79(1); Baptiste v. Granada, 387 So.2d 1235 (La.App. 1st Cir.1980).
Burton testified that the lights on the Jones vehicle were not on at the time of the accident. Jones denied this and claimed that they were on. Jones' claim was corroborated by Circello. Lafferty testified that he did not recall whether Jones had his lights on or not, but that he did not see the Jones vehicle until the Burton vehicle swerved to avoid hitting it. Operating a motor vehicle on a major highway at night without lights is the grossest kind of negligence. La.R.S. 32:301; Dupas v. City of New Orleans, 346 So.2d 322 (La.App. 4th Cir.1977), reversed in part 354 So.2d 1311 (La.1978); Stutts v. Sistrunk, 245 So.2d 721 (La.App. 3rd Cir.1971), writ denied 258 La. 578, 247 So.2d 395 (La.1971). There is a reasonable evidentiary basis in the record for the jury to determine that Jones was operating his vehicle without lights.
The jury's determination that Jones' negligence was a cause of the accident and the injuries to Circello is based on reasonable evaluations of credibility and reasonable inferences arising from the facts. Accordingly, this determination by the jury is not clearly wrong and is affirmed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

IV. LIABILITY OF CHRISTINE P. BURTON (MID-AMERICAN)
The insurer of Burton, Mid-American, answered the appeal and contends that the jury was clearly wrong in determining that the negligence of Burton caused the accident and injuries to Circello.
For negligence to result in a legally enforceable liability it must be a cause in fact of the injury to the plaintiff. Straley v. Calongne Drayage and Storage, Inc., 346 So.2d 171 (La.1977); Dye v. Kean's, 412 So.2d 116 (La.App. 1st Cir.1982), writ denied 413 So.2d 506 (La.1982). The evidence indicates that the impact between the Burton vehicle and the Jones vehicle was not significant. Specifically, Circello testified that he was not injured when the Burton vehicle sideswiped the Jones vehicle. Circello specifically testified that he was not injured until the impact of the Lafferty vehicle caused him to be thrown into the back of the front seat, which then broke and fell on him. Thus, even if it is assumed that Burton was negligent in the operation of her vehicle, that negligence did not cause injury to Circello. The jury was clearly wrong in determining that there was a causal relationship between the negligence of Burton and any injuries that Circello may have sustained, and the jury finding in this regard is reversed. Arceneaux v. Domingue, supra.

V. QUANTUM
The jury rendered an unitemized damage award in favor of Circello in the sum of $3,000. Circello appeals this ruling contending that he is entitled to an award of no less than $30,000 plus specials of $2,076. Circello itemizes his special damages as follows:

1. Gilbert's Ambulance Service $ 60.00
2. Baton Rouge Radiology Group 18.00
3. Baton Rouge General Hospital 70.00
4. The Bone and Joint Clinic 135.00
5. Dr. Harry H. Philibert 1,793.00
 _________
 TOTAL $2,076.00

*244 On June 28, 1977, Circello received severe electrocution burns of the right arm which resulted in the arm being amputated 4 inches below the elbow. These injuries rendered him totally and permanently disabled and there is no claim for loss of wages in these proceedings. On January 23, 1979, Circello consulted Dr. Harry H. Philibert, a family physician emphasizing relief from pain, for treatment of nerve tumors and multiple neuromas in his right arm stump. During the period of January 23, 1979, through October 10, 1979, Circello had approximately 20 visits with Dr. Philibert for this condition. The primary treatment administered was the injection of the problem areas of the stump with steroids to relieve pain.
On October 14, 1979, Circello was brought from the scene of the accident to the emergency room of the Baton Rouge General Hospital by ambulance. The records of the Baton Rouge General Hospital show that he complained of back pain, abdominal pain and headache. Examining revealed that he had no muscle spasms and sat perfectly straight. Circello refused to perform straight leg raising tests. X-rays of his lumbosacral spine revealed no fractures or subluxations, the disc spaces were well maintained, and there were no significant arthritic changes or bony abnormalities. The X-rays were diagnosed as a normal lumbosacral spine series. The diagnosis of the emergency room doctor was "no evidence of injury".
At the trial, Circello testified that he hurt the lower part of his back in the accident. He was given some pain pills by the emergency room doctor, advised to use a heating pad and released. A day or two after the accident, he called Dr. Philibert and was advised to wait to be examined at the next regular appointment for his arm on October 25, 1979.
On October 25, 1979, Dr. Philibert examined Circello. Circello complained of pain in the small of his back and under his left shoulder blade. Dr. Philibert on examination found evidence of muscle spasms. Dr. Philibert diagnosed this condition as a contusion (tear) of the ligaments of the thoracic and lumbar spine. For treatment, Dr. Philibert injected the areas of the fifth lumbar vertebra, first sacral vertebra, and second through sixth thoracic vertebrae with steroids. At this same time, Dr. Philibert also treated Circello for the pain in his right arm stump.
In November of 1979, Circello settled the lawsuit that he had pending from the accident of June of 1977.
On November 7, 1979, Dr. Philibert examined Circello again and found spasms of the trapezius muscle. Circello complained of pain around his left shoulder blade and pain on the top of his left foot. Dr. Philibert injected the trapezius muscle with steroids. Circello saw Dr. Philibert again on December 5, 1979, and had the same symptoms.
Circello testified that in December of 1979, he started shaking all over and consulted Dr. Elven E. Merse in Melville, Louisiana, and was advised that the problem was his nerves. Dr. Merse gave him some nerve pills to take for this condition. Circello then consulted with a Dr. Dugas in Baton Rouge who also diagnosed the condition as a case of nerves and prescribed nerve pills. Circello apparently was not satisfied with this medical advice and on December 2, 1979, consulted Dr. Philibert concerning this condition. Dr. Philibert testified that he found severe spasms of the lumbar spine which he identified as extrapyramidal seizures and had Circello admitted to the Metairie Hospital. Dr. Philibert prescribed cogentin for this condition and the spasms and seizures stopped. Circello saw Dr. Philibert on January 9, 1980, and complained of blurring of his vision which was a side effect of the cogentin.
On May 1, 1980, Circello was admitted to the Metairie Hospital where a bone scan, myelogram and electroencephalogram were performed. The results of these three tests were negative.
During the period of October 25, 1979, until November 4, 1981, Circello consulted Dr. Philibert 34 times. Treatment consisted of multiple steroid injections of his cervical, thoracic, lumbar and sacral spine at *245 various times. At different times, he complained of pain in the small of his back, under his left shoulder blade, in his neck, in his left hand and wrist, and between the shoulder blades. He also complained of nervousness, blurring of vision, headaches, dryness of the mouth, knots in his stomach, and spitting up blood. During all of this period, Circello was also being treated for pain in his right arm and right stump. (It is not alleged that the right arm problems were caused by the accident of October 14, 1979.)
Dr. Philibert testified that Circello did not complain of pain in his neck until June 3, 1980, and did not complain of pain in his left arm and wrist until July 1, 1980. Circello's stomach and lung problems were not related to the accident. Circello had brachial plexus nerve root pressure of the right cervical spine which affected his right arm prior to the accident of October 14, 1977. On June 18, 1979, Circello complained of pain in his low back at the fifth lumbar and first sacral vertebrae level which was caused by the trauma of electrocution in June of 1977. On cross-examination at the trial, Circello admitted that in a deposition connected with his electrocution suit that he stated he dropped out of LSU in the summer of 1979, in part, because of back problems associated with the 1977 accident.
Dr. Stephen M. Wilson examined Circello on February 10, 1981. His report was stipulated to by the parties and read to the jury. Circello gave Dr. Wilson a history of being injured in the lower back in an automobile accident on October 14, 1979. Circello told Dr. Wilson that he had no problems with his lower back prior to that time, but that he had lower back pain since. Dr. Wilson's examination revealed a good range of motion, no muscle atrophy and no sensory loss. The straight leg raising tests were negative. X-rays taken revealed no evidence of fracture or dislocation and the vertebrae alignment was satisfactory. Dr. Wilson diagnosed Circello's condition as muscle and ligamentous strain to the lower back from an automobile accident. He found no permanent disability from the injury and found no objective findings to explain Circello's subjective complaints.
Damage awards made in a trial court may not be modified in an appellate court unless there is clear abuse of discretion. La.C.C. art. 1934(3); Perniciaro v. Brinch, 384 So.2d 392 (La.1980); Reck v. Stevens, 373 So.2d 498 (La.1979). After carefully reviewing all of the evidence of record as it relates to quantum, we cannot say that the jury abused the much discretion allowed it under the law. Accordingly, the award of $3,000 made by the jury is affirmed.

VI. CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Circello and against GEICO[2] and Exchange for $3,000 is affirmed. The judgment of the trial court determining that Mid-American is liable for damages is reversed and the petition against Mid-American is dismissed with prejudice. Exchange and GEICO are cast for all costs of this appeal.
AFFIRMED IN PART AND REVERSED IN PART.
NOTES
[1] Candice Matherne was Mrs. James T. Jones, Jr. at the time of trial.
[2] GEICO did not appeal the jury finding that lafferty's negligence caused injury to Circello.